WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Orson Judd,<br><br>             Plaintiff,<br>vs.<br><br>KeyPoint Government Solutions, Inc.,<br><br>             Defendant. | No. CV-17-08050-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant's Motion to Transfer Venue, or in the Alternative, Dismiss for Failure to State a Claim and for a Stay of Litigation. (Doc. 9.) The Court has already addressed Defendant's Motion to Stay. (Doc. 14.) Also pending before the Court is Plaintiff's Motion for Conditional Certification. (Doc. 11.) The motions are ready for resolution.

**I.      Background**

Plaintiff Orson Judd brings this action against Defendant KeyPoint Government Solutions, Inc. ("KeyPoint") for alleged violations of the Fair Labor Standards Act ("FLSA"). Defendant KeyPoint is incorporated in Delaware, and maintains its corporate headquarters and principal place of business in Loveland, Colorado. (Doc. 1 at 6; Doc. 9 at 3.) Defendant provides "security-clearance background investigations and screening services to the United States Government." (Doc. 1 at 7.) Plaintiff Judd lives in Arizona and worked for Defendant as an investigator from June of 2008 until September of 2014. (Doc. 1 at 5.) Plaintiff alleges that Defendant misclassified numerous investigators as

independent contractors, rather than as employees, in violation of the FLSA. (Doc. 1 at 2-3.) In spite of classification differences, Plaintiff argues that all investigators "perform the same basic job: interviewing subjects, conducting public records searches, interviewing sources, and writing investigation reports." (Doc. 1 at 7.) Plaintiff alleges his position as an investigator regularly required him to work more than forty hours a week, but that he was not eligible for overtime because of his classification as an independent contractor. (Doc. 1 at 3.)

Plaintiff has brought suit against Defendant on behalf of himself, and all other investigators working for Defendant nationwide,[1] for failure to pay overtime wages in violation of 29 U.S.C. § 207. (Doc. 1 at 16-18.) Defendant has moved to transfer this case to the District of Colorado, or in alternative, to dismiss for failure to state a claim and to stay this litigation until the Court's resolution of the Motion to Transfer Venue. (Doc. 9.) While Defendant's motion was pending, Plaintiff filed a Motion for Conditional Certification. (Doc. 11.) Defendant moved for an expedited stay of all litigation deadlines until resolution of the Motion to Transfer Venue (Doc. 12), which the Court granted. (Doc. 14.)

**II.    Standard of Review**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts exercise broad discretion to adjudicate motions to transfer on an individualized, case-by-case determination. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). In making such a determination, courts consider (1)

---

[1]    Because Plaintiff alleges that Defendant reclassified investigators working in California from independent contractors to employees, the Court infers that Plaintiff is not suing on behalf of investigators working for Defendant in California. (Doc. 1 at 4.) Plaintiff's description of the proposed Collective also supports this inference. (Doc. 1 at 13.)

whether the case could have been brought in the forum which the moving party seeks to have the case transferred to, and (2) whether the proposed forum is a more suitable venue based on the convenience of the parties and the interests of justice. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). A plaintiff's choice of forum is given deference and will not ordinarily be disturbed unless a defendant is capable of "making a strong showing" of inconvenience so as to warrant transfer. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Transfer of venue is inappropriate, however, if "the result is merely to shift the inconvenience from one party to another." *Scovil v. Medtronic, Inc.*, 995 F.Supp.2d 1082, 1098-99 (D. Ariz. 2014) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964)).

**III.   Discussion**

    **A.   Proper venue**

28 U.S.C. § 1391 governs the venue of all civil cases in federal district courts and reads, in part:

> A civil action may be brought in—
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Here, venue is proper in the District of Colorado because Defendant is a resident of Colorado. A corporation is "deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Because Defendant's principal place of business is in Loveland, Colorado, it follows that Defendant is subject to the District of

Colorado's jurisdiction[2] and Plaintiff could have filed suit against Defendant there.

**B.     Convenience of the parties and witnesses and the interest of justice**

Courts may consider a variety of factors when determining whether transfer is warranted based on the convenience of the parties and in the interest of justice, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498-99. Other factors that may be considered are "ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Conte v. Ginsey Indus., Inc.*, No. CV-12-0728-PHX-JAT, 2012 WL 3095019, at *2 (D. Ariz. 2012) (internal citations omitted). No single factor is dispositive. *R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp.*, No. CV-12-08261-PCT-JAT, 2017 WL 4409463, at *3 (D. Ariz. 2017) (citing *Stewart*, 487 U.S. at 31).

Defendant argues that the District of Colorado is a more appropriate venue to litigate this case than the District of Arizona for several reasons. According to Defendant, Plaintiff's consent to join the *Smith* litigation[3] demonstrates Plaintiff's previous willingness and capacity to litigate these exact claims in the District of Colorado. (Doc. 9

---

[2]     A corporation's "place of incorporation and principal place are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (internal citations and punctuation omitted); *see also* Fed. R. Civ. P. 4(k)(1)(A).

[3]     Richard Smith worked as an independent contractor for Defendant and filed suit against Defendant, individually and on behalf of all others similarly situated, for unpaid wages under the FLSA in 2015. *Smith v. KeyPoint Gov't Sols., Inc.*, No. 15-CV-00865-REB-KLM, 2016 WL 7324606, at *1-2 (D. Colo. 2016). Judge Robert E. Blackburn granted summary judgment in favor of Defendant upon finding Smith's claims to be barred by the FLSA's statute of limitations. *Id.* at 4. The FLSA claims of those who "opted-in" to the collective action—including Plaintiff Judd—were dismissed without prejudice. *Id.*

at 7.) Defendant further maintains that Colorado is more convenient for Defendant's witnesses, putative class members, and non-party witnesses. (Doc. 9 at 7-11.) Defendant also points to the ease with which evidence stored at Defendant's headquarters in Loveland could be accessed in the District of Colorado. (Doc. 9 at 11-12.) Defendant asserts that Plaintiff's claims against Defendant will, by virtue of Defendant's work on behalf of the United States, implicate unique security concerns that the District of Colorado is familiar with because of the *Smith* litigation. (Doc. 9 at 12-13.) Finally, Defendant emphasizes the differences in the courts' dockets, and argues that the District of Colorado's caseload will allow for faster resolution of Plaintiff's claims than if the case remains in the District of Arizona. (Doc. 9 at 13-14.)

Plaintiff opposes Defendant's Motion to Transfer. (Doc. 16.) Focusing heavily on the deference Plaintiff's choice of forum should be afforded, Plaintiff maintains that Defendant's arguments regarding his forum choice are mistaken. (Doc. 16 at 7-10.) Moreover, Plaintiff directs the Court to the parties' contacts with Arizona (Doc. 16 at 10-11), as well as Defendant's failure to meet its burden of proof regarding the convenience of the District of Colorado for party and non-party witnesses. (Doc. 16 at 12-15.) Finally, Plaintiff characterizes the differences between the districts' dockets as insignificant. (Doc. 16 at 17.)

Interestingly, both parties accuse the other of forum shopping. (Doc. 9 at 2; Doc. 16 at 4.) That being said, the Court finds that there are several factors that support a finding that transfer of this case to the District of Colorado is warranted. First, the weight given to Plaintiff's choice of forum is afforded less deference than customary because Plaintiff seeks to represent a class. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *3 (D. Ariz. 2017). Further, Plaintiff voluntarily opted-in to the *Smith* litigation prior to its dismissal, which lends credence to the idea that Plaintiff is capable and willing to litigate these claims in the District of Colorado. *See*, *e.g.*, *Reiffin v. Microsoft Corp.*, 104 F.Supp.2d 48, 52 (D. D.C. 2000) (finding that transfer of venue was

supported by plaintiff's previous decision to litigate "clearly related" action in transferee forum).

"The convenience of witnesses is said to be the most important factor in passing on a transfer motion." *F.T.C v. Wyndham Worldwide Corp.*, No. CV-12-1365-PHX-PGR, 2013 WL 1222491, at *3 (D. Ariz. 2013) (internal citation omitted). In evaluating this factor, courts look not just at the quantity of witnesses in each potential venue, but to the nature and quality of witness testimony. *Id.* at *4. "To demonstrate an inconvenience to witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance." *Haswell v. Nat'l R.R. Passenger Corp.*, No. CV-05-723-TUC-DCB(JM), 2006 WL 839067, at *2 (D. Ariz. 2006).

Here, Defendant has identified two witnesses—Jennifer Boaz and Julie Hammond—each of whom Defendant expects will have prominent roles in this litigation. (Doc. 9 at 8.) Jennifer Boaz serves as the "National Director of Independent Contracts" for Defendant. (Doc. 9 at 8.) Boaz lives in North Carolina, but regularly travels to Loveland, Colorado. (Doc. 9 at 8.) According to Defendant, Boaz will testify to the following: "the Company's engagement with independent contractor Investigators; the purpose for those contracts; the requirements imposed on KeyPoint by its clients; how independent contractors receive work; and how the Company pays independent contractor Investigators." (Doc. 9 at 8.) Julie Hammond who is employed by Defendant as a "Contractor Liaison" and worked directly with Plaintiff is expected to testify to "Judd's contractual relationship with the Company, including the investigations he agreed to perform and the compensation he received." (Doc. 9 at 8.) Like many of Defendant's Contractor Liaisons who may be called to testify, Hammond resides in Colorado. (Doc. 9 at 9, n.1.) The Court agrees with Defendant that the potential testimony of Arizona witnesses is not as significant as that of the Colorado witnesses. Accordingly, the convenience of the parties is weighted towards transfer.

Finally, the Court is persuaded by Defendant's argument that the District of Arizona's docket, as compared to that of the District of Colorado, favors transfer. (Doc. 9

at 13-14.) Bearing in mind the interest of ensuring a speedy trial, docket conditions are a factor that courts may consider in deciding a motion to transfer venue. *See Conte*, 2012 WL 3095019, at *2. As of September 2017, judges in the District of Arizona had 636 pending cases, whereas judges in the District of Colorado had 451 pending cases; the median time between the filing of a civil action to trial was 32.6 months in the District of Arizona and 23.9 months in the District of Colorado.[4] Because it is likely that Plaintiff's claims will be resolved faster in the District of Colorado, this factor also weighs in favor of transfer.

### IV. Conclusion

The Court finds that in the interest of justice, transferring the present case to the District of Colorado is appropriate. Because the Court's Order to stay the litigation during pendency of Defendant's Motion to Transfer precluded Defendant from filing a response to Plaintiff's Motion for Conditional Certification, it will be for the District of Colorado to determine how it wishes to address Plaintiff's Motion for Conditional Certification. (Doc. 11.) Accordingly,

**IT IS ORDERED** that Defendant's Motion (Doc. 9) is **granted in part** as to transfer of venue, and **denied in part without prejudice** as to dismissal for failure to state a claim.

**IT IS FURTHER ORDERED** that Clerk of Court **transfer** this matter to the United States District Court for the District of Colorado and **terminate** the case in the District of Arizona.

Dated this 8th day of February, 2018.

Honorable Steven P. Logan
United States District Judge

---

[4] Federal district court docket statistics are calculated every six months. U.S. COURTS, U.S. District Courts Combined Civil and Criminal Federal Court Management Statistics (September 30, 2017), http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2017/09/30-1.

7