IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:18-cv-00327-RM

ORSON JUDD, an individual, on behalf of himself and on behalf of all others similarly situated

        Plaintiff,

v.

KEYPOINT GOVERNMENT SOLUTIONS INC., a Delaware corporation

        Defendant.

---

**DEFENDANT KEYPOINT GOVERNMENT SOLUTIONS INC.'S
MOTION TO COMPEL ARBITRATION OF OPT-IN KRISTIN HETTLER'S CLAIMS**

---

Defendant KeyPoint Government Solutions, Inc. ("KeyPoint" or the "Company"), through its undersigned counsel, respectfully moves to compel arbitration of Kristin Hettler's claims ("Hettler"). *See* Dkt. Nos. 21 and 21-1.

**I.      INTRODUCTION AND FACTUAL BACKGROUND**

    **A.      Nature and Stage of the Proceedings**

Plaintiff Orson Judd ("Judd" or "Plaintiff") filed his Collective Action Complaint in the United States District Court for the District of Arizona on March 10, 2017. Dkt. No. 1. Judd's Complaint alleges that KeyPoint misclassified its investigators as independent contractors instead of employees such that KeyPoint now owes overtime wages to investigators across the country. *Id.* at ¶ 1. On April 17, 2017, KeyPoint filed its Motion to Transfer Venue, or in the alternative, Dismiss for Failure to State a Claim and for a Stay of Litigation. Dkt. No. 9. The

United States District Court for the District of Arizona granted KeyPoint's Motion to Transfer on February 9, 2018, ordering the clerk to transfer the matter to the United States District Court for the District of Colorado, and denied the Motion to Dismiss without prejudice.  Dkt. No. 24.  On February 16, 2018, KeyPoint filed its Motion to Dismiss, Dkt. No. 41, and Plaintiff filed his Motion for Conditional Certification.  Dkt. No. 43.  Should KeyPoint's Motion to Dismiss be denied, the Company requests that Kristin Hettler be compelled to arbitrate her claims for the reasons set forth below.

  **B.**  **Factual Background**

    **1.**  **KeyPoint's Business**

KeyPoint provides specialized investigative and risk mitigation services to a variety of U.S. government agencies and organizations, in the civilian, defense, and intelligence sectors. Declaration of Jennifer Boaz, attached as Exhibit 1, at ¶ 3.  The Company offers, among other services, a variety of security clearance, background investigation, site inspection, financial, and other fraud investigation services to law enforcement agencies.  *Id.*  KeyPoint also provides background information and primary source document gathering services to assist government agencies.  *Id.*

KeyPoint is obligated under government contracts to provide specific investigations services to various federal agencies.  Boaz Decl., Ex. 1., at ¶ 4.  KeyPoint's primary role in its investigations business is to ensure that its contractors follow the security procedures dictated by KeyPoint's clients, including the Office of Personnel Management and the Department of Homeland Security.  *Id.* at ¶ 5.  In general, KeyPoint's investigations business consists of investigating individuals who seek security clearance (or renewal of a clearance) to be affiliated

with a federal agency. *Id.* at ¶ 6.

### 2. Hettler Executed KeyPoint's Independent Contractor Engagement Agreement After Efforts To Have The Agreement Enjoined Failed.

In June 2015, KeyPoint revised its Independent Contractor Engagement Agreement ("ICEA"). On June 4, 2015, KeyPoint sent an email to 1011 active contractors engaged to perform services pursuant to the contract between KeyPoint and the Office of Personnel Management (OPM). *See* Declaration of Amy Thorne-Starck, Exhibit 2, at ¶ 3. Attached to the email were four separate .pdfs containing (1) a Cover Letter and Exhibit A; (2) the ICEA; (3) a copy of the Complaint from *Richard Smith, et al. v. KeyPoint Government Solutions*, Case No. 1:15-cv-00865 (D. Colo.) ("*Smith Action*") (the only litigation pending at the time); and (4) an auto insurance form. *See id.* at ¶ 3, and Ex. 2-A.[1] Contractors were advised to review the attached documents carefully. *See id.* at ¶ 3.

The first .pdf attached to the email contained a two-page Cover Letter from Jennifer L. Boaz, National Director of Independent Contractors. After advising contractors to review the ICEA, the Cover Letter highlighted the inclusion of an arbitration agreement within the ICEA, advised contractors of the *Smith Action*, advised contractors of their ability to opt-out of the arbitration agreement as it pertains to the *Smith Action*, explained what would happen if the opt-out form was signed, explained what would happen if the opt-out form was not signed, confirmed that contractors who did not sign the opt-out would still retain the ability to bring claims against KeyPoint that were alleged in the *Smith Action*, and importantly advised contractors that no adverse action would be taken against them under either scenario:

---

[1] A similar packet was sent to independent contractors on the DHS contract. For completeness sake and because it was referenced in Ms. Thorne-Starck's declaration, that exhibit to Ms. Thorne-Starck's declaration is also attached as Exhibit 2-B to that declaration here.

> Please be advised that the enclosed ICEA contains an arbitration agreement which applies to all pending and future litigation, including but not limited to *Richard Smith, et al. v. KeyPoint Government Solutions,* Case No. 1:15-cv-00865, pending in the United States District Court for the District of Colorado. The *Smith* case is a proposed collective action which alleges that KeyPoint has violated the Fair Labor Standards Act by classifying some investigators (possibly including you) as independent contractors instead of employees and alleges that these investigators should have been paid overtime for hours worked over 40 per week. KeyPoint denies and is vigorously contesting these allegations. A copy of the operative complaint in the *Smith* case is attached.
>
> The ICEA also contains an opt-out provision with respect to pending litigation. If you execute the ICEA and do not return the opt-out form as provided in the ICEA, you will not be able to participate in the *Smith* collective action either as a plaintiff or member of the collective action. Instead, if you wanted to bring a claim against KeyPoint like that in the *Smith* case, you would not be precluded from doing so, but you would be required to do so in arbitration on behalf of yourself only. If you execute the ICEA and also execute and return the opt-out form as provided in the ICEA, the arbitration provision will have no effect on your ability to participate in the *Smith* collective action; although the arbitration provision will continue to apply to other claims you have or in the future may have. Whether or not you return the opt-out form is completely up to you, and regardless of what you choose, there will be no adverse action taken against you as a consequence. If you choose to do so, you must return the executed opt-out within ten (10) business days of the date of this letter. If you return the executed ICEA without the opt-out form, you will not have opted out of the arbitration provision and it will apply.

*See* Thorne-Stack Decl., Ex. 2-A, at 3.

The next .pdf attached to the initial email contained an eight page ICEA. Thorne-Stack Decl., Ex. 2-A, at 5-12. Paragraph 6 of the ICEA contained an Arbitration Agreement whereby "KeyPoint and Contractor mutually agree to resolve any justiciable disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court." The

4

Arbitration Agreement explicitly delineates that it applies to the claims asserted in this action: "This arbitration agreement … shall apply to any and all claims arising out of or relating to this Contract, the Contractor's classification as an independent contract. . . [claims] under the Fair Labor Standards Act." *Id*. Paragraph 6 further detailed the mechanism for initiating arbitration, a class action waiver, and the applicable rules governing arbitration. After setting forth the terms of the arbitration agreement, Paragraph 6(g) advised contractors **in bold** of their right to opt-out of arbitration for pending claims, including their right to consult with counsel regarding the agreement:

> (g) **Contractor's Right to Opt Out of Arbitration of Pending Litigation. Arbitration of litigation pending in federal or state court is not a mandatory condition of contracting with KeyPoint. If you wish to opt out of mandatory arbitration of litigation pending at the time of execution of this contract, you must execute the "Arbitration of Pending Litigation Opt-Out Form" that is attached to this contract as Exhibit A, and return it with the executed contract. If you opt out as provided in this paragraph, you will not be subject to any adverse action as a consequence of that decision and may pursue available legal remedies with respect to pending litigation without regard to this Agreement. You have the right to consult with counsel of your choice concerning this Agreement.**

Thorne-Stack Decl., Ex. 2, at ¶ 7; Ex. 2-A at 9 (Independent Contractor Engagement Agreement at pp. 3-5) (emphasis in original).

Included as page 8 of the ICEA was Exhibit A entitled "Arbitration of Pending Litigation Opt-Out Form" which in its totality stated: "By signing and dating this form, and returning it with my executed Agreement, I opt-out of the provision in paragraph 6, sub-paragraph (g) of this Agreement regarding arbitration of pending litigation. I understand that by opting out, this Agreement does not require me to arbitrate any claims I may have in pending litigation." *Id.* at Ex. A (Independent Contractor Engagement Agreement at p. 8). A second copy of Exhibit A

was also provided to contractors as page 2 of the Cover Letter. Thorne-Stack Decl., Ex. 2-A, at 4. A third .pdf attached to the email contained a complete copy of the *Smith Action* Complaint filed in this action. Thorne-Stack Decl., Ex. 2-A, at 13-26. The caption page of the *Smith Action* Complaint identified Plaintiff's counsel by name, and included their email addresses, business addresses, and telephone and facsimile numbers. Therefore, between the ICEA and the *Smith Action* Complaint, each contractor was not only advised they could consult with counsel, but were given the complete contact information for Plaintiff's counsel (which includes Plaintiff's counsel as in the present matter).

On June 19, 2015, Plaintiff's counsel in the *Smith Action* filed an Ex Parte Application for Temporary Restraining Order, Dkt. No. 17, in an effort to prevent KeyPoint from obtaining written agreements from any potential plaintiffs to arbitrate claims that were encompassed in the *Smith Action* Complaint. KeyPoint responded on June 22, 2015, Dkt. No. 20, and a hearing was held on June 23, 2015. The Court issued its ruling denying Plaintiff's Motion the same day. Dkt. No. 22. After noting the Court's concerns regarding ripeness and standing, as well as Plaintiff's failure to "proffer either argument or evidence" relevant to the validity of the arbitration provision in the revised ICEA, the Court explained:

> [T]he court disagrees with plaintiff's characterization of defendant's notice as confusing or misleading. The description of the claims asserted in this case is quite similar to that which the court itself might have given had it been directing notice following conditional certification of the collective action. In addition, contrary to plaintiff's arguments, the notice made clear that consultation with an attorney was advisable and that no adverse consequence - no retaliation - would attach to a contractor's decision to opt out of the arbitration provision.
>
> Nor do I perceive anything inherently unreasonable in affording contractors ten business days in which to consider whether to opt

> out of the arbitration provision. The relatively healthy rate of return of the arbitration opt out forms suggest far less confusion than plaintiff fears exists . . . .

Dkt. No. 22 at pp. 6-7.

A little more than four months later, Kristin Hettler executed her ICEA, as well as the Arbitration of Pending Litigation Opt-Out Form. Boaz Decl., Ex. 1, at ¶ 7.[2]

## II. ARGUMENT

### A. The Federal Arbitration Act Governs The Arbitration Agreement.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, was passed to ensure that arbitration agreements were treated and enforced by the courts like any other contract. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 1745 (2011). The FAA requires courts to vigorously enforce agreements to arbitrate, reflecting a federal policy that favors the resolution of disputes through the process of arbitration. *Id.* This "liberal federal policy" in favor of arbitration agreements, as established and codified in the FAA, creates a body of substantive federal law that applies to every arbitration agreement that falls within the scope of the FAA. *Perry v. Thomas*, 482 U.S. 483, 489 (1987). Indeed, by passing the FAA, it was Congress's intent to make the resolution of disputes efficient by quickly and easily moving the disputes from judicial courts to arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); *see also Green v. Fishbone Safety Solutions, Ltd.*, No. 16-cv-01594-PAB-KMT, Dkt. No. 79 (D. Colo. Sept. 7, 2017) at p. 3.

Moreover, the FAA preempts all potentially applicable and conflicting state law. *See Preston v. Ferrer*, 552 U.S. 346, 356-56 (2008). Arbitration agreements under the FAA are

---

[2] Since that time, Hettler has executed a Supplier Subcontract Agreement which also includes an arbitration provision. Boaz Decl. at ¶ 8, Ex. 1-B. For ease, this Motion will refer to the Arbitration Agreement in the singular.

valid, irrevocable, and enforceable unless the contract is otherwise voidable under state contract law. *See* 9 U.S.C. § 2. Therefore, any defense specifically applicable to an arbitration agreement, as opposed to all contracts, violates the FAA. *See id.* ("Save upon such grounds as exist at law or in equity for the revocation of *any contract.*") (emphasis added). The FAA applies to arbitration agreements "involving commerce." 9 U.S.C. § 2. The Supreme Court has long held that the phrase "involving commerce" encompasses the broadest exercise of Congress's powers under the Commerce Clause. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995)).

Here, the Hettler Arbitration Agreement expressly requires disputes be resolved under the FAA. Boaz Decl., Ex. 1-A at ¶ 6 and Ex. 1-B at ¶ 9. Furthermore, the "involving commerce" requirement of the FAA is satisfied by the relationship between Hettler, who remains an independent contractor providing services out of Ohio, and KeyPoint, which is located in Colorado. *See* 9 U.S.C. § 1 (defining commerce to include "commerce among the several States"); Boaz Decl., Ex. 1-A at ¶ 6 and Ex. 1-B at ¶ 9. Accordingly, the Hettler Arbitration Agreement is governed by the FAA.

      **B.**    **The Arbitration Agreements are Enforceable Under State Law.**

Existence of a valid arbitration agreement is simply a matter of contract between the parties. *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–45 (1995)). When deciding whether the parties agreed to arbitrate a dispute, courts apply state-law principles that govern the formation of contracts. *First Options of Chicago, Inc.*, 514 U.S. at 944; *see also Allen v. Pacheco*, 71 P.3d

375, 378 (Colo. 2003) (Colorado applies principles governing contract formation to determine whether parties have agreed to submit a claim to arbitration).

    **1.**    **Colorado Contract Law**

The Hettler Arbitration Agreement provides that it "shall be governed by and construed in accordance with the laws of the state of Colorado (without regard to that jurisdiction's choice of laws and principles)." Boaz Decl., Ex. 1-A at ¶ 13, Ex. 1-B at ¶ 13. Under Colorado law, an enforceable contract requires "mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration." *Vescent, Inc. v. Prosun Intern., LLC*, 10-CV-01103-WYD-CVS, 2010 WL 4658862, at *2 (D. Colo. Nov. 9, 2010) (citing *Denver Truck Exchange v. Perryman,* 307 P.2d 805, 810 (Colo. 1957)); *see also Sumerel v. Goodyear Tire & Rubber Co.,* 232 P.3d 128, 133 (Colo. Ct. App. 2009) ("A contract is formed when one party makes an offer and the other accepts it, and the agreement is supported by consideration.").

With regard to mutual assent, or "a meeting of the minds," the parties' agreement to the essential contractual terms must be evidenced by some manifestation of mutual assent. *Schmidt v. Frankewich,* 819 P.2d 1074, 1077 (Colo. Ct. App. 1991); *Lumuenemo v. Citigroup Inc.*, No. 08-CV-00830-WYD-BNB, 2009 WL 371901, at *3 (D. Colo. Feb. 12, 2009) (finding that assent was manifested by employee by accepting employment where arbitration agreement was a condition of employment). Here, Hettler and KeyPoint both executed the Hettler Arbitration Agreement, evidencing their mutual assent to be bound by the arbitration agreement. *See Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. Ct. App. 2008) ("Acceptance of an offer is generally defined as words or conduct that, when objectively viewed, manifests an intent to accept an offer.").

Finally, the arbitration agreement was supported by sufficient consideration as KeyPoint and Hettler both promised to be bound by the terms of the agreement, to waive a jury, and to arbitrate their claims against each other. *DeFeyter v. Riley*, 606 P.2d 453, 454 (Colo. Ct. App. 1979) (holding that a promise exchanged for a promise imposes mutual obligations and is sufficient consideration).

2. **Ohio Contract Law**

Should the Court find that Colorado law does not control whether there is a valid and enforceable agreement to arbitrate, the same finding would result under the laws of Ohio, where Hettler signed her Arbitration Agreement and where she provides independent contractor services.

Under Ohio law, essential elements of an enforceable contract are an "offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and legality of object and of consideration." *Sabatine BK Development, LLC v. Fitzpatrick Enterprises, Inc.*, 85 N.E.3d 1127, 1132, 2017 -Ohio- 805 (Ohio Ct. App. 2017). Each of these elements is met as demonstrated in Section II.B.1, *supra*.

Moreover, for the same public policy reasons articulated by Congress and the United States Supreme Court, Ohio courts, whether applying the FAA or Ohio law, also favor and enforce arbitration agreements. *See City of Piqua v. Ohio Farmers Ins. Co.*, 84 Ohio App. 3d 619, 621, 617 N.E.2d 780 (Ohio Ct. App. 1992); *ABM Farms, Inc. v. Woods*, 81 Ohio St. 3d 498, 500, 692 N.E.2d 574 (Ohio 1998). In fact, "[b]oth the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration." *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 66, 908 N.E.2d 408 (Ohio 2009) (reversing lower court's ruling that arbitration

agreement was unconscionable).  As stated by the Ohio Supreme Court in *Hayes*, "[a]rbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute... [and] has the additional benefit of unburdening crowded court dockets." *Id.*; *see also, Vanyo v. Clear Channel Worldwide*, 156 Ohio App. 3d 706, 710, 808 N.E.2d 482 (Ohio Ct. App. 2004) (arbitration agreements generally favored as less costly and more efficient method of settling disputes).  An arbitration agreement is binding and enforceable, just like other contracts.  *Id*.

A presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision.  *See Council of Smaller Enterprises v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 668, 687 N.E.2d 1352 (Ohio 1998).  "In examining an arbitration clause, a court must bear in mind the strong presumption in favor of arbitrability and resolve all doubts in favor of arbitrability." *Neubrander v. Dean Witter Reynolds, Inc.*, 81 Ohio App. 3d 308, 311, 610 N.E.2d 1089 (Ohio Ct. App. 1992).  "An arbitration clause in a contract should not be denied effect unless it can be said with positive assurance that the clause is not susceptible of an interpretation that covers the asserted dispute." *Union Twnp., Clermont Cty. v. Union Twnp., Professional Firefighters' Local 3412,* 142 Ohio App.3d 542, 548, 756 N.E.2d 204 (Ohio Ct. App. 2001).  These principles apply with equal force to cases involving employment disputes. *See, e.g.*, *McKenzie v. Cintas Corp.*, 988 N.E.2d 52, 35 IER Cases 572 (Ohio Ct. App. 2013) (employment contract's arbitration clause, rather than compensation agreement, controlled compensation dispute, even though the compensation agreement pre-existed the employment contract).  For these reasons, the Court should find that the Hettler Arbitration Agreement would be valid under Ohio law, in addition to Colorado law.

C. **Hettler's Claims Against KeyPoint Are Subject to Arbitration.**

    1. **FLSA Claims are within the Scope of Disputes Covered in the Agreements.**

The mere existence of an arbitration clause creates a presumption in favor of arbitration. *Sanchez v. Nitro-Lift Techs. L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014). The Tenth Circuit applies a three-part test when determining whether an issue falls within the scope of an arbitration clause. *Id.* First, the court should classify the clause as either broad or narrow. *Cummings v. FedEx Ground Package System Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005). Second, if the agreement is narrow, the court determines whether the dispute is over an issue that is within the purview of the clause. *Id.* Third, if the agreement is broad, there arises a presumption of arbitrability, and arbitration of even a collateral matter must be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it. *Id.*

In *Sanchez*, the 10th Circuit found that a clause calling for the arbitration of "[a]ny dispute, difference or unresolved question between the parties" was unquestionably a broad arbitration clause. *See Sanchez*, 762 F.3d at 1146-47; *see also, e.g., Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (explaining that an arbitration clause stating "all disputes or controversies arising under or in connection with this Agreement…will be settled exclusively by arbitration" was "the very definition of a broad arbitration clause" (omission in original)); *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (stating that an arbitration clause covering "[a]ny controversy, claim, or breach arising out of or relating to this Agreement…is a 'broad' one").

The Hettler Arbitration Agreement includes an unquestionably broad clause, as it requires the arbitration of:

> [A]ny and all claims arising out of or relating to this Contract, the Contractor's classification as an independent contractor, Contractor's provision of services to KeyPoint or its Customers, the payments received by Contractor for providing services to KeyPoint or its Customers, the termination of this Contract, and all other aspects of the Contractor's relationships with KeyPoint, past, present or future . . . .

Boaz Decl., Ex. 1-A at ¶ 6 and Ex. 1-B at ¶ 9. The Hettler Arbitration Agreement thereafter specifically provides for arbitration of claims under the Fair Labor Standards Act. *Id.* Therefore, Hettler's FLSA claim falls within the scope of the Arbitration Agreement.

Because Hettler agreed to arbitrate her present dispute against KeyPoint, this Court must order Hettler to arbitrate her claims in accordance with the terms of the Hettler Arbitration Agreement. *See* 9 U.S.C. § 4 ("The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").

**D.   Hettler's Must Arbitrate her Claims on an Individual Basis.**

A party may not be compelled to arbitrate a class-wide proceeding unless the party contractually agreed to do so. *Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). This is because arbitration is a matter of consent. *Id.* The changes that result from the shift from bilateral arbitration to class-action are "fundamental." *Concepcion*, 536 U.S. at 347

(citing *Stolt-Nielsen*, 559 U.S. at 686).[3] As the Supreme Court explained:

> Arbitration is poorly suited to the higher stakes of class litigation. In litigation, a defendant may appeal a certification decision on an interlocutory basis and, if unsuccessful, may appeal from a final judgment as well. Questions of law are reviewed de novo and questions of fact for clear error. In contrast, 9 U.S.C. § 10 allows a court to vacate an arbitral award *only* where the award "was procured by corruption, fraud, or undue means"; "there was evident partiality or corruption in the arbitrators"; "the arbitrators were guilty of misconduct in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the controversy[,] or of any other misbehavior by which the rights of any party have been prejudiced"; or if the "arbitrator exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award . . . was not made."

*Concepcion,* 536 U.S. at 350. The Hettler Arbitration Agreement expressly prohibits class and representative actions. Boaz Decl., Ex. 1-A at ¶ 6 and Ex. 1-B at ¶ 9. Accordingly, her claims must proceed in an individual arbitration. *See* 9 U.S.C. § 4; *see also Green,* No. 16-cv-01594-PAB-KMT, at pp. 14-17.

### III. CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCIvR 7.1, Defendant's counsel certifies that Defendant's counsel began conferring with Plaintiff's counsel regarding this Motion on November 8, 2017. *See* Exhibit 3. Plaintiff's counsel has confirmed on February 28, 2018 that Plaintiff is opposed to the relief sought in Defendant's Motion to Compel Arbitration.

### IV. CONCLUSION

For all the foregoing reasons, KeyPoint requests that the Court order Hettler to arbitration to arbitrate her claims individually and not as part of a class or collective action.

---

[3] Defendant recognizes that the United States Supreme Court has granted the National Labor Relations Board's Petition for Writ of Certiorari in *N.L.R.B. v. Murphy Oil USA, Inc.*, 137 S.Ct. 809 (2017). While the law could change with the Supreme Court's eventual ruling, as of today, the current state of the law provides that arbitration agreements providing for class-action waivers for employment-related claims are valid. *See Murphy Oil USA, Inc. v. N.L.R.B.*, 808 F.3d 1013, 1019-20 (5th Cir. 2015).

Respectfully submitted,

By: *s/Margaret Parnell Hogan*
    Margaret Parnell Hogan
    Michelle L. Gomez
    LITTLER MENDELSON, P.C.
    1900 16th Street, Suite 800
    Denver, CO  80202
    Telephone:  303.629.6200
    Facsimile:  303.629.0200
    Email:  mphogan@littler.com
           mgomez@littler.com

    Jacqueline E. Kalk
    Claire B. Deason
    LITTLER MENDELSON, P.C.
    80 South 8th Street, Suite 1300
    Minneapolis, MN  55402
    Tele:  (612) 313-7610
    Fax:  (763) 647-7964
    JKalk@littler.com
    CDeason@littler.com

Karin M. Cogbill
LITTLER MENDELSON, P.C.
50 West San Fernando Street, 7th Floor
San Jose, CA  95113-2434
Tele:  (408) 998-4150
Fax:  (408) 288-5686
Email:  KCogbill@littler.com

ATTORNEYS FOR DEFENDANT KEYPOINT GOVERNMENT SOLUTIONS, INC.

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 1st day of March, 2018, a true and correct copy of the foregoing **DEFENDANT KEYPOINT GOVERNMENT SOLUTIONS INC.'S MOTION TO COMPEL ARBITRATION OF OPT-IN KRISTIN HETTLER'S CLAIMS** was filed and served via CM/ECF on the following:

Joshua G. Konecky
Leslie H. Joyner
SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP
2000 Powell St., Suite 1400
Emeryville, CA  94608
jkonecky@schneiderwallace.com
ljoyner@schneiderwallace.com

ATTORNEYS FOR PLAINTIFF

                                        *s/Meri Pincock*
                                        Meri Pincock

Firmwide:153156025.1 063273.1053