# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00327-RM-STV

ORSON JUDD,

    Plaintiff,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC.,

    Defendant.

___

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
___

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on the Motion to Compel Arbitration of Opt-In Kristin Hettler's Claims (the "Motion") [#51], filed by Defendant KeyPoint Government Solutions, Inc. ("KeyPoint"). The Court has considered the Motion and the related briefing, the entire case file, and the applicable case law. The Court also held oral argument on the Motion on July 20, 2018. [#90] For the following reasons, this Court respectfully **RECOMMENDS** that KeyPoint's Motion to Compel Arbitration be **GRANTED.**[1]

## I.    BACKGROUND

    KeyPoint provides background checks for the federal government. [#1 at ¶ 4] As investigators for KeyPoint, Plaintiff Orson Judd and others performed investigations,

---

[1] "[T]he law in the Tenth Circuit is unclear as to whether motions to compel arbitration are dispositive for purposes of 28 U.S.C. § 636(b)(1)." *Bohart v. CBRE, Inc.*, No. 17-cv-00355-RM-KMT, 2018 WL 1135535, at *2 (D. Colo. Feb. 28, 2018) (comparing cases). Out of an abundance of caution, the Court will issue a recommendation on the instant Motion.

including acquiring and interviewing witnesses and reviewing public records, and preparing reports on those investigations for KeyPoint to submit to the government. [*Id.*] Investigators, including Judd, routinely worked in excess of 40 hours per week. [*Id.*] Judd alleges that KeyPoint violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), by improperly classifying him and other investigators as independent contractors, enabling KeyPoint to withhold overtime wages due to them for working over 40 hours a week. [*See generally* #1]

Kristin Hettler is also a former investigator who worked for KeyPoint. [#21-1 at 3] Ms. Hettler filed her consent to join Judd's suit on September 27, 2017. [*Id.*]

### A. 2015 *Smith* Action and KeyPoint's Independent Contractor Engagement Agreement

In 2015, Richard Smith, a former KeyPoint investigator, filed a FLSA action against KeyPoint on behalf of a nationwide proposed class of similarly situated investigators in the United States. *Smith v. KeyPoint Government Solutions, Inc.*, Civil Action No. 15-cv-00865-REB-KLM (D. Colo. 2015) ("*Smith* Action"), Docket No. 1-1.[2] On April 24, 2015, that suit was transferred to the U.S. District Court for the District of Colorado. *Id.*, Docket No. 1.

In June 2015, while the *Smith* Action remained pending, KeyPoint revised its Independent Contractor Engagement Agreement ("ICEA"). [#51-5] KeyPoint emailed its independent contractors, including Ms. Hettler, notifying them of the ICEA changes. [#51-5 at 2] KeyPoint included the following documents with the email: a cover letter

---

[2] The Court takes judicial notice of the proceedings in the *Smith* Action. *See, e.g.*, *Hodgson v. Farmington City*, 675 F. App'x 838, 841 (10th Cir. 2017) (Facts that may be judicially noticed include "another court's publicly filed records 'concerning matters that bear directly upon the disposition of the case at hand.'") (quoting *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007)).

2

highlighting an arbitration agreement within the ICEA and options for the independent contractors to opt-out of arbitration; the ICEA with the attached opt-out form; a copy of the complaint in the *Smith* Action; and an auto insurance form. [#51-5]

The ICEA arbitration agreement stated that "KeyPoint and Contractor mutually agree to resolve any justiciable disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court." [*Id.* at 7] The arbitration agreement applied to "any and all claims arising out of or relating to [the ICEA], the Contactor's classification as an independent contractor, . . . and claims arising under or related to the . . . Fair Labor Standards Act," among other statutes and causes of action. [*Id.*] Furthermore, the agreement applied to "all pending and future litigation between Contractor and KeyPoint in state or federal courts," as of the date the agreement was executed by the contractor [*id.*], with the exception of contractors completing the opt-out form in order to "opt out of mandatory arbitration of litigation pending at the time of execution" of the ICEA [*id.* at 9 (emphasis omitted)]. The ICEA arbitration agreement also explicitly stated that "[a]ny arbitration shall be governed by the American Arbitration Association Commercial Arbitration Rules ("AAA Rules")," with some limited exceptions. [*Id.* at 7]

In October 2015, Ms. Hettler executed the ICEA and also completed the opt-out form. [#51-2] By completing both forms, the ICEA arbitration provision would not have impacted Ms. Hettler's "ability to participate in the *Smith* collective action" [#51-5 at 3], but she never sought to join the *Smith* Action. Smith's motion for conditional certification was ultimately denied, *Smith* Action, Docket No. 83, and the Court granted KeyPoint's Motion for Summary Judgment, finding that Smith's claims were barred by

3

the FLSA statute of limitations, *id.*, Docket No. 95. The Court entered final judgment in favor of KeyPoint. *Id.*, Docket No. 97.

## B. Instant Suit

Judd filed the instant suit in the United States District Court for the District of Arizona on March 10, 2017. [#1] Judd requests that this matter be certified as a collective action. [#1 at 18; #43] Judd seeks compensatory and statutory damages, including lost wages, earnings, and all other money owed to him and members of the collective, and an order directing KeyPoint to identify and restore restitution and compensation for lost wages to all current and former investigators classified as independent contractors, among other relief. [#1 at 18-19]

In April 2017, KeyPoint moved to transfer the action to this Court. [#9] Ms. Hettler filed her consent to join the instant suit on September 27, 2017, while the case remained pending in the District of Arizona. [#21-1] On November 8, 2017, counsel for KeyPoint sent a letter to Ms. Hettler's counsel, indicating that they were in receipt of her consent to join, and requesting that she withdraw her consent and "submit her claims to binding arbitration pursuant to the terms of her ICEA." [#51-7]

A few months later, the Arizona federal district court granted KeyPoint's motion to transfer and transferred the instant suit to this Court. [#24] Judd refiled his Motion for Conditional Certification in this Court on February 16, 2018.[3] [#43] KeyPoint filed its Motion to Compel Arbitration [#51] in March 2018. The Motion is fully briefed. [##59, 62] Additionally, the parties addressed the Motion to Compel Arbitration at a status

---

[3] Also on February 16, 2018, KeyPoint moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [#41] This Court has issued a Recommendation that KeyPoint's Motion to Dismiss be denied. [#83]

conference before this Court on April 10, 2018. [#64] As ordered by the Court [#73], the parties filed supplemental briefing, addressing the impact of the United States Supreme Court's decision in *Epic Systems Corporation v. Lewis*, 138 S. Ct. 1612 (2018) on the pending Motions in this matter [##76-77]. The Court held oral argument on the instant Motion on July 20, 2018. [#90]

## II. LEGAL STANDARDS

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"). *See* 9 § U.S.C. § 2. But "[t]he existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedone Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). "[U]nlike the general presumption that a particular issue is arbitrable when the existence of an arbitration agreement is not in dispute, when the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." *Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1370 (D. Colo. 2014) (quoting *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998)), *aff'd*, 811 F.3d 371 (10th Cir. 2016) ("*Nesbitt II*"); *see also Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002). "A federal court must apply state contract law principles when determining whether an arbitration agreement is valid and enforceable." *Nesbitt*, 74 F. Supp. 3d at 1371 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Once the court determines the existence of a valid and enforceable arbitration agreement, the FAA applies. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also Nesbitt*, 74 F. Supp. 3d at 1370 (same). Accordingly, the FAA requires the court to "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds*, 470 U.S. at 221, unless the agreement to arbitrate is invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," *Nesbitt II*, 811 F.3d at 376 (quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)); *see also Epic Sys.*, 138 S. Ct. at 1622. But an arbitration agreement will not be nullified by "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.*

In considering a motion to compel arbitration under the FAA, the court applies "a standard similar to that governing motions for summary judgment." *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005). Accordingly, first KeyPoint "must present evidence sufficient to demonstrate an enforceable arbitration agreement." *Id.* Then, the burden shifts to Ms. Hettler "to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Id.*

### III.    ANALYSIS

In support of its Motion to Compel Arbitration, KeyPoint argues that 1) Ms. Hettler's arbitration agreement is valid under state law and thus the FAA governs the agreement [#51 at 7-11]; 2) Ms. Hettler's FLSA claims are within the scope of disputes subject to arbitration [*id.* at 12-13]; and 3) Ms. Hettler must arbitrate her claims on an

individual basis [*id.* at 13-14]. Because the Court finds that the arbitration agreement is valid, and because the parties have agreed to arbitrate the scope of the agreement, the Court only addresses KeyPoint's first argument below.[4]

### A. Validity of Arbitration Agreement

As a threshold matter, the Court must determine whether an agreement to arbitrate existed in the first place. *Avedone*, 126 F.3d at 1287. While Ms. Hettler cites to case law stating that the presumption in favor of arbitration falls away when the parties dispute the existence of a valid arbitration agreement at the outset [#59 at 9], the parties do not in fact dispute that they entered into the ICEA, which included their agreement to arbitrate and the opt-out form. [*See, e.g.*, #51 at 7 ("Hettler executed her ICEA, as well as the Arbitration of Pending Litigation Opt-Out Form."); #59 at 9 ("[I]n addition to executing the required 2015 ICEA, which contains an arbitration provision, Ms. Hettler also executed and submitted an opt-out form . . . .")] In any event, the ICEA arbitration agreement is clearly a valid and enforceable arbitration agreement under Colorado contract law.[5]

---

[4] And regardless, with respect to KeyPoint's third argument, the parties are now in agreement that in light of the United States Supreme Court's holding in *Epic Systems*— that the National Labor Relations Act ("NLRA") does not provide a basis for refusing to enforce arbitration agreements that waive FLSA collective actions, 138 S. Ct. at 1623- 32—Ms. Hettler "will no longer be able to challenge mandatory arbitration agreements based on there being a collective action waiver." [#77 at 3; *see also id.* at 6 (describing Ms. Hettler's three arguments against compelling arbitration and stating that Ms. Hettler "withdraw[s]" the third argument related to *Epic Systems*)] Thus, Ms. Hettler is no longer arguing that the class action waiver renders the arbitration agreement "unenforceable, unconscionable, void, or voidable," which was the only relevant scope issue that the ICEA arbitration agreement reserved for this Court. [#51-2 at 3-4]

[5] The parties do not dispute whether Colorado law applies, and the ICEA states that it "shall be governed by and construed in accordance with the laws of the state of Colorado (without regard to that jurisdiction's choice of laws and principles)." [#51-2 at 7; *see also* #51 at 9-10; #59 at 8-12] Even if the Court were to apply the law of Ohio,

7

Under Colorado law, a valid contract, including an arbitration agreement, "requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012) (quoting *Pierce v. St. Vrain Valley School Dist. RE-1J*, 981 P.2d 600, 603 (Colo. 1999)), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013); *see also Lumuenemo v. Citigroup Inc.*, No. 08-cv-00830-WYD-BNB, 2009 WL 371901, at *3 (D. Colo. Feb. 12, 2009) ("In determining whether a valid arbitration clause exists, . . . . courts generally apply ordinary state-law principals that govern the formation of contracts."). KeyPoint and Ms. Hettler both executed the ICEA [#51-2 at 7], evidencing their mutual assent to be bound by the agreement, and Ms. Hettler also manifested her assent by agreeing to provide services for KeyPoint, while accepting the arbitration agreement as a condition of her work [*id.* at 1, 3]. The arbitration agreement was supported by the consideration of KeyPoint and Ms. Hettler mutually promising to be bound by the terms of the agreement, including "resolv[ing] any justiciable disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court." [*Id.* at 3]; *See Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 544 (4th Cir. 2005) ("Because the Arbitration Agreement, on its face, unambiguously requires both parties to arbitrate, the district court erred when it concluded that the Arbitration Agreement was not supported by consideration."); *see also PayoutOne v. Coral Mortg. Bankers*, 602 F. Supp. 2d 1219, 1224 (D. Colo. 2009) (finding "an exchange of one party's promise or

---

where Ms. Hettler signed the contract and worked as an investigator, Ohio contract law is essentially identical to Colorado law, and thus the analysis would be the same. [*See* #51 at 10-11; #59 at 8-12] Accordingly, for simplicity, and consistent with the language of the ICEA, the Court applies a Colorado contract law analysis.

performance for the other party's promise or performance" constitutes "consideration for creating an enforceable contract").

KeyPoint has presented evidence of the agreement, including Ms. Hettler's ICEA itself, initialed on every page, including the sections describing the arbitration agreement and the opt-out form. [#51-2] The ICEA is signed and dated by Ms. Hettler and KeyPoint. [*Id.* at 7] See *Axis Venture Grp., LLC v. 1111 Tower*, LLC, No. 09-cv-01636-PAB-KMT, 2010 WL 1278306, at *3 (D. Colo. Mar. 30, 2010) (finding defendants had "met their initial burden" of providing "sufficient evidence that the parties agreed" to arbitrate, including by presenting an initialed copy of the agreement, which incorporated the arbitration clause by reference, and a signed form indicating receipt of the arbitration agreement). KeyPoint also has presented evidence of the opt-out form, signed, dated, and initialed by Ms. Hettler, which states Ms. Hettler's understanding "that by opting out, [the ICEA] does not require me to arbitrate any claims I may have in pending litigation." [*Id.* at 8]

The burden then shifts to Ms. Hettler to demonstrate that there is a "genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Stein*, 396 F. Supp. 2d at 1213. But again, Ms. Hettler does not contest the making of the arbitration agreement. Instead, she argues that pursuant to the opt-out form, her "claims based on misclassification as an independent contractor and for overtime under the FLSA, which were asserted in the *Smith* action, are not subject to arbitration." [#59 at 10] But, that argument goes to the the scope, not the validity of the arbitration agreement. Accordingly, the ICEA arbitration agreement is valid and enforceable.

## B. Scope of the Arbitration Agreement Must Be Decided by an Arbitrator

At the heart of the instant Motion is the parties' disagreement with regard to the scope of the opt-out form executed by Ms. Hettler. [#51 at 12-13; #59 at 10-12] Ms. Hettler argues that by executing the opt-out form, she opted out of arbitrating any claims pending at the time she signed the form, as well as any identical claims in future litigation. [#59 at 10-12] More specifically, because the claims pending in the *Smith* Action at the time were for misclassification and overtime pay under the FLSA, Ms. Hettler argues that by extension she should not have to arbitrate her misclassification and overtime FLSA claims here. [*Id.* at 11] KeyPoint counters that Ms. Hettler reads an ambiguity that does not exist into the ICEA, and that the opt-out provision by its terms only applied to litigation pending at the time the agreement was signed. [#62 at 3-5] KeyPoint argues that opting out of arbitration in the *Smith* Action, which was pending when the parties executed the ICEA, does not extend to opting out of arbitration with respect to the instant action, filed nearly a year and a half later. [*Id.*]

As the Tenth Circuit recently reaffirmed, The Tenth Circuit, and "all of [its] sister circuits to address the issue[,] have unanimously concluded that incorporation of the . . . AAA Rules" in an arbitration agreement "constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1283 (10th Cir. 2017) (collecting cases). Therefore, "when parties clearly and unmistakably agree[] to arbitrate arbitrability," including by incorporating the AAA Rules into their agreement, "all questions of arbitrability—including the question of whether claims fall within the scope of the agreement to arbitrate—ha[ve] to be resolved by an arbitrator." *Id.* at 1284.

10

Here, the ICEA arbitration agreement explicitly states that "[a]ny arbitration shall be governed by the [AAA Rules]," with limited exceptions that are not applicable here. [#51-2 at 4] Rule 7 of the AAA Commercial Arbitration Rules empowers the arbitrator "to rule on his or her own jurisdiction, including any objections with respect to the . . . scope . . . of the arbitration agreement or the arbitrability of any claim or counterclaim." AAA Commercial Arbitration Rules, R-7 (Oct. 1, 2013), *available at* https://adr.org/sites/default/files/CommercialRules_Web.pdf; *see also* #51-2 at 5 ("The AAA Rules may be found at www.adr.org or by searching for 'AAA Commercial Arbitration Rules.'"). Moreover, at oral argument on July 20, 2018, both parties confirmed that the scope of the arbitration agreement, including the parties' disagreement with respect to whether Ms. Hettler must arbitrate any claims in the instant action that were also at issue in the *Smith* Action, must be determined by an arbitrator. Accordingly, the scope of the instant arbitration agreement must be determined by an arbitrator, not this Court.

## IV. CONCLUSION

For the foregoing reasons, this Court respectfully **RECOMMENDS** that KeyPoint's Motion to Compel Arbitration [#51] be **GRANTED** and that Kristin Hettler be ordered to proceed individually to arbitration on her claims against KeyPoint.[6]

---

[6] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the

11

DATED: July 23, 2018                    BY THE COURT:

                                                    s/Scott T. Varholak
                                                    United States Magistrate Judge

---

magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).