## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No.  18-cv-00327-RM-STV

ORSON JUDD,
individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC.,
a Delaware corporation,

      Defendant.

---

## JOINT MOTION FOR APPROVAL OF
## FLSA COLLECTIVE ACTION SETTLEMENT

---

Plaintiff Orson Judd ("Judd"), individually and on behalf of all others similarly situated, and Defendant KeyPoint Government Solutions, Inc., ("KeyPoint" and together with Judd, the "Parties") have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis for monetary relief.  The settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a bona fide dispute, is fair and equitable to all concerned, and contains a reasonable award of attorneys' fees.

The Parties respectfully request that the Court issue an order: (1) approving the settlement as set forth in the Settlement Agreement and Release of Claims ("Agreement") attached as Exhibit 1 to the declaration of Joshua Konecky submitted herewith (2) approving the proposed Settlement Notice (attached as Exhibit B to the Settlement Agreement) and directing its distribution, and subsequent distribution of the settlement proceeds in accordance with the Agreement; (3) approving the request for reasonable service awards to Plaintiffs Judd and Hettler; (4) approving

1

Judd's request for attorneys' fees, costs, and expenses; and (5) dismissing this lawsuit with prejudice.

## I.  BACKGROUND

### A.  Factual Allegations

KeyPoint conducts security clearance background investigations and performs other services on behalf of the U.S. government.  Judd and Hettler performed investigative services for KeyPoint and KeyPoint classified them (and those they claim are similarly situated to them) as independent contractors.  *See* Compl. ¶ 10, ECF No. 1.  Judd's complaint (and Ms. Hettler's arbitration demand) alleges that KeyPoint violated the FLSA by misclassifying Contract Investigators, including Judd and Hettler, as independent contractors and by failing to pay overtime wages.  *Id*. ¶¶ 59-60.  KeyPoint denies that it misclassified any employees as independent contractors, denies any liability to Judd, Hettler, or other opt-in Plaintiffs who subsequently joined the litigation, or any other investigator, for any overtime wages or other damages.  KeyPoint further alleges that most of the Opt-In Plaintiffs (307 of 367), are the subject of a pending Motion to Compel Arbitration (ECF No. 182) and would otherwise likely be compelled to mandatory individual (non-collective) arbitration.

### B.  Overview of Litigation and Settlement Negotiations

On March 10, 2017, Judd filed his complaint against KeyPoint, alleging a putative collective action under the FLSA, 29 U.S.C. § 201 *et seq*. on behalf of himself and other Contract Investigators.  *See generally*, Compl.

In December 2018, the Court conditionally certified a collective of Contract Investigators and, at the end of the notice period, Plaintiffs' counsel filed 367 consents to join, 307 of whom KeyPoint contends are subject to binding arbitration.  Declaration of Joshua Konecky at ¶¶ 39, 53. The parties agreed to participate in mediation for 48 plaintiffs who KeyPoint contends do not have

binding arbitration agreements or are not otherwise subject to KeyPoint's pending Motion to Compel Arbitration. *Id*. at ¶ 66. This initial mediation took place on May 30, 2020 under the direction of experienced mediator Hunter Hughes, but did not culminate in a settlement. *Id*. at ¶ 69. On July 30, 2020, the Parties engaged in a second all-day virtual mediation session under the direction of Mediator Hughes regarding all those who filed consents to join, including those who KeyPoint contends are subject to binding arbitration. *Id*. While a settlement was not reached that day, the Parties' continued their arms-length negotiations. *Id*. at ¶ 71. On August 18, 2020, the parties reached an agreement on $900,000 recovery for the 331 Opt-In Plaintiffs whose last day of service with KeyPoint was within the applicable statute of limitations. *Id*. at ¶ 73.[1] The parties subsequently negotiated for recovery of attorneys' fees and litigation expenses, as well as settlement administration costs. *Id.* On August 28, 2020, the parties reached an agreement on these matters - that KeyPoint would separately pay $600,000 to cover attorneys' fees and litigation expenses incurred by Plaintiffs in this case, plus the settlement administration costs. *Id*. Also, on August 28, 2020, the Parties filed a Joint Status Report, advising the Court that they had reached an agreement to resolve this matter, and requesting a stay of existing case management deadlines until October 12, 2020. ECF No. 214. The Court granted that request the same day, on August 28, 2020. ECF No. 215. On October 26, 2020, KeyPoint filed a motion to dismiss certain Opt-ins whose claims accrued outside the applicable statute of limitations described above [ECF 221], *see*

---

[1] The statute of limitations for bringing overtime claims under the Fair Labor Standards Act is a minimum of two years from the last date the alleged employee worked for the defendant without receiving the required overtime. This two-year period can be extended to three years if the alleged employee demonstrates a "willful" violation. Additionally, the statute of limitations particular to this case was tolled for an additional 486 days because of delays associated with resolving KeyPoint's motion to transfer, motion for reconsideration of the order conditionally certifying the collective, and disputes concerning the 216(b) notice. In total, the statute of limitations for each Opt-In Plaintiff, if Plaintiffs prove a willful violation of the FLSA, is 4 years and 121 days before the date on which that Opt-In Plaintiff submitted his or her consent to join.

note 1, *supra*, which Judd does not oppose. *See* Konecky Decl. at ¶ 79. The result is that all Plaintiffs will either be dismissed from this action because their claims are outside the applicable statute of limitations, or will be part of the Agreement to resolve their claims.

## II. SETTLEMENT TERMS

### A. Settlement Amount and Allocation

Under the terms of the Settlement Agreement, Defendants have agreed to pay individual settlement payments (each an "Individual Settlement Payment") and up to a maximum amount (the "Maximum Gross Settlement Amount") to fully resolve this litigation. *See* Settlement Agreement at ¶ 19. Specifically, under the terms of the Settlement Agreement, KeyPoint will pay a non-reversionary settlement amount of $900,000 to the members of the Collective, plus an additional $600,000 for attorneys' fees and costs. Additionally, KeyPoint will separately pay the costs of settlement administration. *Id.*

Individual Settlement Payments for each Plaintiff will be calculated and apportioned from the gross settlement fund based on the number of workweeks each Plaintiff was engaged by Defendant during the statute of limitations period pursuant to the following formula:

(a) The Settlement Administrator will calculate Plaintiffs' settlement pool amount by subtracting any service payments awarded by the Court from the Total Plaintiffs Settlement Amount, the result constituting the "Interim Settlement Pool";

(b) The Settlement Administrator will determine the number of Adjusted Settlement Workweeks for each Plaintiff and all Plaintiffs in the aggregate by assigning the following values to each workweek: (i) a multiplier of three to any workweek belonging to a Plaintiff was an opt in plaintiff in the *Smith* action and who sat for deposition in the *Smith* Action; (ii) a multiplier of two to any workweek belonging to a Plaintiff who submitted substantive discovery responses (in addition to objections) to Defendants' Interrogatories and Requests for Production while their claims were pending in District Court or who substantially completed the written arbitration survey circulated to Plaintiffs' by Plaintiffs' Counsel; and (iii ) a multiplier of one to all other Workweeks. (The Plaintiffs in Categories (i), and (ii) are identified on Exhibits C-D respectively. To the extent a Plaintiff appears on more than one list, the higher of the multipliers applies to his or her workweeks).

4

*See* Settlement Agreement at ¶ 41.

This formula is designed to reasonably reflect how active participation in the Litigation, including, by way of example, by responding to discovery or arbitration surveys, increased an Opt-In Plaintiff's likelihood of success on his or her claims and, conversely, how those who did not participate had an increased risk of being subject to dismissal. *See* Konecky Decl. at ¶ 89. The formula also is designed to reflect the additional delay in recovery of those individuals who originally filed their consent to join forms in the previous *Smith* litigation and appeared for deposition in that case. *Id.* This allocation formula is not a material term of the Settlement. *See* Settlement Agreement at ¶ 42(b).

Once all the Adjusted Settlement Workweeks are determined, the Settlement Agreement goes on to specify the following method to calculate the individual settlement shares:

> (c) The Settlement Administrator will calculate the total number of Adjusted Settlement Workweeks belonging to each Plaintiff during the Statute of Limitations Period, and the aggregate total number of Adjusted Settlement Workweeks worked by all Plaintiffs during the Statute of Limitations Period.

> (d) The Settlement Administrator will divide the Interim Settlement Pool by the aggregate total number of Adjusted Settlement Workweeks, resulting in the "Workweek Value."

> (e) The Settlement Administrator will calculate each Plaintiff's Individual Settlement Payment by multiplying that individual's total number of Adjusted Settlement Workweeks by the Workweek Value. Notwithstanding the foregoing, each Plaintiff shall receive no less than one hundred dollars ($100).

In exchange for their share of the settlement fund, Judd and all other potential Plaintiffs will agree to release their claims against KeyPoint. *See* Settlement Agreement at ¶ 41(c)-(e); *see also* Exhibit B to the Agreement. The Parties have submitted a Settlement Notice to inform Plaintiffs about the Agreement and the resolution of this matter. *See* Exhibit B to Settlement Agreement. The Parties agree that the Settlement Notice is informative, provides the necessary information about the lawsuit, the claims alleged, the release, and the process to follow to

participate.  Opt-in Plaintiffs will receive their portion of the settlement funds after receiving notice of the settlement.

**B.**     **Service Awards to Plaintiffs Judd and Hettler**

Plaintiffs request that the Court approve service awards of $7,500 each for Mr. Judd and Ms. Hettler for the particular risks, time, and efforts they undertook to prosecute the in-court and arbitration aspects of this matter. Mr. Judd and Ms. Hettler devoted substantial time and effort conferring with counsel, reviewing pleadings and other documents, preparing sworn declarations, responding to written discovery, sitting for deposition, participating in settlement negotiations, and reviewing the proposed settlement agreement that, if approved by this Court, will bring substantial relief to the Collective. KeyPoint does not oppose the requested service awards, which combined represent just 1% of the Maximum Gross Settlement Amount and 1.6 % of the Plaintiff recovery amount.  Both Mr. Judd and Ms. Hettler have submitted sworn declarations detailing their work and participation in this matter.

**C.**     **Attorneys' Fees and Litigation Costs**

The Settlement Agreement provides for a reasonable payment of Plaintiffs' attorneys' fees, costs, and litigation expenses up to $600,000. The $600,000 for Plaintiffs' attorneys' fees and costs was negotiated and agreed to after the parties reached agreement on $900,000 Collective recovery for the Opt-In Plaintiffs.

Plaintiffs are seeking a total attorneys' fee award of $508,398.84 plus reimbursement of actual out-of-pocket costs of $91,601.16. As of October 21, 2020, a fee award of $508,398.84 would result in a "negative" multiplier of approximately 0.66 of Plaintiffs' Counsel's lodestar using rates adjusted to the Denver market,[2] after exercising billing judgment to winnow down the

---

[2]  As further discussed in the declaration of Joshua Konecky filed concurrently herewith, Plaintiffs' Counsel have adjusted their lodestar downward for this case, from their customary and court-

hours. Additionally, KeyPoint does not contest the amount Plaintiffs' Counsel seeks in fees and expenses.

## III.     ARGUMENT

### A.     The Court Should Approve the Settlement

The Parties seek approval of a settlement under section 216(b) of the FLSA, as such settlements may require court approval.  As this Court has recognized, "[a]pproval should be granted when: (1) the FLSA settlement is reached as a result of bona fide dispute; (2) the proposed settlement is fair and equitable to all parties concerned; and (3) the proposed settlement contains a reasonable award of attorneys' fees." *Hartley v. Time Warner NY Cable LLC*, No. 13-CV-00158 (RM-MJW), 2014 WL 4437282, at *1 (D. Colo. Sept. 9, 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir.1982); and *Baker v. Vail Resorts Mgmt. Co.*, Case No. 13–CV–01649, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014)). The settlement of this case meets all three of these requirements.

#### 1.     There is a Bona Fide Dispute

The Agreement resolves a bona fide dispute.  To demonstrate a bona fide dispute,

> parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.

*Hartley*, 2014 WL 4437282, at *1.

Judd claims that KeyPoint misclassified him and others as independent contractors instead of employees and failed to pay them overtime wages for working more than 40 hours per week.

---

approved 2020 Northern California rates, to be within the prevailing market rates in Denver, Colorado for individuals with similar levels of qualifications, skill and experience who are doing comparable work as Plaintiffs' counsel. *See* Konecky Decl. at ¶¶ 117-118, 134-141.

*See* Compl. ¶¶ 4, 10, 59-60.  In this connection, Judd contends that the Investigators receive all case assignments directly from KeyPoint and are dependent on the individual tasks KeyPoint makes available for them to complete.  Judd further contends that the Investigators are prohibited from subcontracting out or assigning work to anyone else to perform, cannot exercise managerial independence or judgment in ways that impact profit and loss, and that they must comply with detailed policies and procedures enforced by KeyPoint. *See, e.g.,* [ECF 43 at 12-13].  Additionally, Judd contends that KeyPoint has been on notice of the legal dispute concerning its classification of Investigators as independent contractors since 2011, when the Internal Revenue Service (IRS) found in favor of another one of its Investigators on this very issue. *Id.* at 8-9.

KeyPoint on the other hand disputes that it misclassified any employees (including Judd) as independent contractors, and it thus does not owe any overtime wages.  KeyPoint contends that it did not control Judd's schedule or supervise his work; that Judd controlled his own profits and losses, and provided his own equipment for investigations; and, in addition, that Judd applied his own special skills and experience to KeyPoint's projects.  In similar litigation against KeyPoint, the Court noted that the fact that KeyPoint classified some investigators as independent contractors "to meet unpredictable customer demands, maintaining a baseline of investigators in the field as employees and engaging others as independent contractors as needed when and where customer demand increases," on its own does not justify a conclusion that a defendant consciously or recklessly ignored a risk that the practice violated the FLSA . *Smith v. KeyPoint*, Case No. 1:15-cv-00865-REB-KLM (D. Co.) (ECF No. 95) at p. 5.  Thus, KeyPoint disputes that it violated FLSA in any respect, and asserts that, regardless, any violation was not willful, so no liquidated or punitive damages could be available to Judd or the collective members.

If Judd's allegations were proven correct, KeyPoint would be faced with the prospect of a

monetary judgment in favor of Judd, as well as an obligation to pay litigation fees and costs incurred by him. If KeyPoint's arguments were proven correct, then Judd would recover no money, and may be required to pay Defendant's costs. The parties on both sides were represented by competent counsel throughout this litigation.

Further, many of the Opt-In Plaintiffs may be subject to mandatory individual (non-collective) arbitration, which could result in years of arbitration to secure individual awards for each member of the collective.  There is thus a bona fide dispute between the Parties under the FLSA.

### 2.      The Proposed Settlement is Fair and Reasonable

The Agreement is fair and reasonable. "To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee[] and must not frustrate the FLSA policy rationales." *Hartley*, 2014 WL 4437282, at *2 (citing *Baker*, 2014 WL 700096 at *2).  Courts consider four factors to determine whether a settlement is fair and reasonable:

> (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Id.*

#### a.   *The Parties Fairly and Honestly Negotiated the Settlement.*

The Settlement was reached after hard-fought adversarial litigation over three-and-a-half years, including extensive investigation, discovery, and motion practice. The proposed Settlement was formally negotiated following two arms-length mediation sessions with a respected wage and hour mediator, Hunter Hughes. The use of a mediator weighs against a finding of collusion. *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were

free of collusion and undue pressure"); *In re Molycorp, Inc. Sec. Litig.*, No. 12-CV-00292 (RM/KMT), 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017) (collecting cases and finding that "Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved").

Moreover, as further discussed in the declaration of Joshua Konecky, the $900,000 recovery for the Plaintiffs represents an excellent recovery in light of the estimated number of overtime hours the Opt-In Plaintiffs worked.  Konecky Decl. at ¶¶ 100-107.

In sum, there was no fraud or collusion between the Parties in reaching the Settlement. Rather, the Settlement is the product of an arms-length negotiation by experienced counsel and has the effect of (1) providing significant relief to Plaintiffs and (2) eliminating the inherent risks both sides would bear if this litigation continued to a resolution on the merits. Thus, the Court should find that the parties fairly and honestly negotiated the Settlement.

> b. *Serious Questions of Law and Fact Exist and the Value of Immediate Recovery Outweighs the Mere Possibility of Future Relief*

Moreover, there exist disputed questions of law and fact that render ultimate success, for either side, uncertain. Both Parties recognize that KeyPoint classified Contract Investigators as independent contractors, and that properly classified independent contractors are not due overtime wages.  The Parties, however, dispute whether the classification was appropriate.  KeyPoint has also asserted that in the event a violation of the FLSA is found, it acted at all times in good faith, thereby negating the application of liquidated damages. Further, many of the collective members have allegedly signed arbitration agreements that may prevent them from participating in this lawsuit and could force them to bring their claims individually in the arbitral forum. The Settlement Agreement, however, also provides for their recovery irrespective of the arbitration agreements.

Although the Parties both believe their cases are strong, they are subject to the considerable

risk that is inherent in litigation. "The presence of such doubt augurs in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility no recover after long and expensive litigation." *In re Qwest Comms. Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009). Here, a trial on the merits would involve significant risk as to both liability and damages. Litigating the conditionally certified collective action in Court, Judd and the Opt-In Plaintiffs would have to establish that they were improperly classified as independent contractors, and further that they worked over forty hours in given workweeks. Meanwhile, Hettler and whatever other Opt-In Plaintiffs may be compelled to individual arbitrations would have to make the same showing. Whether in Court or in arbitration, willfulness would need to be proved to obtain additional, liquidated damages. The Parties' counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The Agreement alleviates these uncertainties and provides for immediate (and meaningful) recovery to the Collective instead of the mere possibility of future relief after protracted litigation. It likewise alleviates uncertainties for KeyPoint, as damages will be ascertained and agreed to without a trial.

### c. The Parties Agree That the Settlement is Fair and Reasonable.

The endorsement of a proposed FLSA settlement by both parties is a "factor that weighs in favor of approval" because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanilla* v. *A&R Demolition, Inc.*, No. CIV.A. H-04-1965, 2008 WL 9410399, at *5 (S.D. Tex. May 7, 2008). Here, both Parties believe the proposed Agreement is a fair and reasonable resolution of the claims.

### B. The Service Awards Requested are Reasonable

Service awards are common in class and collective action cases. *Slaughter v. Sykes Enters.*,

Case No. 17-cv-02038-KLM, 2019 U.S. Dist. LEXIS 21767, at *21 (D. Colo. Feb. 11, 2019); *Geiger v. Z-Ultimate Self Def. Studios LLC,* Case No. 14-cv-00240-REB-NYW, 2017 U.S. Dist. LEXIS 232669, at *19 (D. Colo. July 6, 2017). The purpose of such awards is "to compensate class representatives for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action..." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Moreover, the $7,500 sought for each of Mr. Judd and Ms. Hettler, here, is commensurate with incentive fees awarded in other cases in this district, under analogous circumstances. *See, e.g. Ostrander v. Customer Eng'g Servs., LLC*, 2019 U.S. Dist. LEXIS 27645, at *13 (D. Colo. Feb. 20, 2019) (finding $7,500 proposed service award reasonable where the named plaintiff responded to discovery, sat for deposition, and participated in mediation); *Pliego v. Los Arcos Mexican Restaurants, Inc*., 313 F.R.D. 117, 131 (D. Colo. 2016) (finding $7,500 proposed service award reasonable where the named plaintiff assisted counsel in reviewing documents produced by defendants and participated in settlement conference); *Whittington v. Taco Bell of Am., Inc.,* Case No. 10-cv-01884-KMT-MEH, 2013 U.S. Dist. LEXIS 161665, at *23 (D. Colo. Nov. 13, 2013) (finding $7,500 service award reasonable); *Shaw v. Interthinx*, 2015 U.S. Dist. LEXIS 52783, 2015 WL 1867861, at *9 (D. Colo. Aug. 22, 2015) (approving $10,000 incentive awards to each of the five named plaintiffs).

In evaluating the appropriateness of service awards, courts consider the following relevant factors: (1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation. *Geiger v. Z-Ultimate Self Def. Studios LLC*, Case No. 14-cv-00240-REB-NYW, 2017 U.S. Dist. LEXIS 232669, at *19 (D. Colo. July 6,

2017). As discussed below, application of these factors demonstrates that the service awards requested for Mr. Judd and Ms. Hettler are warranted here.

### 1.   Mr. Judd and Ms. Hettler devoted substantial time and effort to this litigation

A service award is appropriate where the named plaintiff remained fully involved and expended considerable time and energy during the course of the litigation. *Ostrander v. Customer Eng'g Servs., LLC*, Case No. 15-cv-01476-PAB-MEH, 2019 U.S. Dist. LEXIS 27645, at *12 (D. Colo. Feb. 20, 2019); *Pliego v. Los Arcos Mexican Rests., Inc.,* 313 F.R.D. 117, 131 (D. Colo. 2016). ).  Such involvement includes participating in the discovery process, including: sitting for depositions and responding to interrogatories and requests for production; participating in the preparation of pleadings filed on behalf of the class; soliciting updates on the status of the litigation; and participating in settlement decisions, among other tasks. *See id.; see also Shaw v. Interthinx, Inc.,* Case No. 13-cv-01229-REB-NYW, 2015 U.S. Dist. LEXIS 52783, at *25 (D. Colo. Apr. 21, 2015).

Here, Mr. Judd and Ms. Hettler each expended substantial time assisting in the prosecution of the case. Judd Decl. at ¶¶ 11-19; Hettler Decl. at ¶¶ 4-15. They each provided valuable information to counsel, assisted in the drafting of pleadings, met in person with counsel, traveled and sat for deposition. *Id*.  For instance, Mr. Judd provided information during lengthy interviews, responded to written discovery, and assisted in preparing damages calculations for use in evaluating KeyPoint's exposure. Judd Decl. at ¶¶ 15, 20.  He also prepared for and sat for his deposition, which required him to travel several hours from his home to Phoenix, Arizona. *Id*. at ¶¶ 16-18. He further assisted in preparing and evaluating the case for mediation, and in the settlement process itself, remaining available to counsel to answer any questions that may come up. Judd Decl. at ¶ 19.

Similarly, Ms. Hettler provided information during lengthy interviews, responded to extensive written discovery, and produced hundreds of pages of documents. Hettler Decl. at ¶¶ 9, 11. Ms. Hettler travelled from Dayton to Columbus, Ohio to prepare for and sit for her deposition, and further provided valuable information to counsel for use in taking the deposition of KeyPoint's corporate witness on the arbitration opt-out. *Id*. at ¶ 10.

Both Mr. Judd and Ms. Hettler maintained close contact with Counsel for the duration of their involvement with the case. Judd Decl. at ¶¶ 14-19; Hettler Decl. at ¶¶ 7-11. The involvement and dedication of both Mr. Judd and Ms. Hettler has been a fundamental and essential element of this case. Konecky Decl. at ¶¶ 169-170. There would be no case or settlement without the contributions of each of them.

### 2. Mr. Judd's and Ms. Hettler's efforts resulted in substantial benefits to the Collective

In addition to weighing the amount of time and effort expended by the named plaintiffs, courts also consider the degree to which their efforts benefitted the class. *Geiger v. Z-Ultimate Self Def. Studios LLC*, Case No. 14-cv-00240-REB-NYW, 2017 U.S. Dist. LEXIS 232669, at *19 (D. Colo. July 6, 2017).

Here, Mr. Judd's numerous contributions to this litigation will significantly benefit the Collective. First, the case would not have been filed but for Mr. Judd's willingness to step forward after the earlier Smith case was dismissed. Second, Mr. Judd put his personal interests aside and committed himself to representing the interests of the Collective as a whole, rather than maximizing just his own personal recovery or asserting other individual claims that were beyond the scope of the collective action complaint. Third, Mr. Judd substantially contributed to several important victories that significantly improved Plaintiffs' position in the litigation and settlement discussions. For example, Mr. Judd worked closely with Counsel to respond to KeyPoint's early

motion to dismiss the case. Judd Decl. at ¶ 13. As another example, Mr. Judd devoted substantial time to reconstructing his hours worked for KeyPoint to provide an estimate of unpaid overtime used to calculate KeyPoint's exposure for mediation. *Id.* at ¶¶ 15, 20. These are just a few examples of Mr. Judd's important contributions, without which the excellent result achieved here would not have been possible.

Ms. Hettler also made numerous contributions to this litigation that will significantly benefit the Collective. Rather than being deterred after having her claims compelled to arbitration, Ms. Hettler pressed forward so that her case could assist as a marker for the other individuals who might be compelled to arbitration, and to lend support for the potentially hundreds of other arbitrations that might follow. *Id.* at ¶ 7. In addition to responding to substantial written discovery and appearing for deposition, Ms. Hettler provided valuable information for use in settlement negotiations, which facilitated a settlement that will provide substantial recovery to the Collective. Hettler Decl. at ¶ 15. Additionally, Ms. Hettler was a current employee of KeyPoint when she stepped forward, prior to conditional certification, to join Mr. Judd's challenge to KeyPoint's independent contractor designation. *Id.* at ¶ 17. Stepping forward in this manner came with the significant risk of exposing Ms. Hettler in a public forum to her current employer as someone willing to lead a major legal challenge to their policies and practices. *Id.* Ms. Hettler was also aware that KeyPoint may be able to recover costs from her if it prevailed on Ms. Hettler's claims. *Id.* These risks, however, did not stop Ms. Hettler from stepping forward and making substantial sacrifices to bring about this settlement for the Collective. *Id.*

### 3. The requested service awards promote the public policies underlying the Fair Labor Standards Act

Approving the requested service awards will promote important public policies underlying Plaintiffs' wage-and-hour claims. Plaintiffs' claims are brought under the FLSA, a remedial

statute intended to protect the rights of workers. *See Tennessee Coal Iron & R. Co., v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944) (abrogated on other grounds). Furthermore, the FLSA's strong public policy in favor of strict enforcement of minimum wage and overtime laws is well-established and fundamental to the FLSA's protective purpose. *See Loeza v. JP Morgan Chase Bank NA,* 2014 WL 4912730, at *3 (S.D. Cal. Sept. 30, 2014) ("an employer who knows or should have known that an employee is or was working overtime is obligated to pay overtime [] even if the employee does not make a claim for the overtime compensation.") (quoting *Lindow v. United States,* 738 F.2d 1057, 1060–61 (9th Cir.1984)).

Here, both Mr. Judd and Ms. Hettler worked hard to further the important public policies underlying the FLSA.  They acted on their convictions by devoting considerable time to this case, and by making personal sacrifices to see it through to an excellent result that furthers the important public policies of the FLSA.

### C.    The Request for Attorneys' Fees and Costs are Reasonable

Plaintiffs are seeking a total attorneys' fee award of $508,398.84 plus reimbursement of actual out-of-pocket costs of $91,601.16 to compensate them for their extensive work, over more than three and a half years, in achieving to resolve the disputed misclassification and overtime claims made under the FLSA by the investigators who opted-in to this case. None of the fees or costs that Plaintiffs seek will come out of the $900,000, non-reversionary payment to the Collective. Rather, as noted above, KeyPoint has agreed to pay $600,000 for Plaintiffs' attorneys' fees and costs, which was separately negotiated after an agreement was reached as to the Plaintiff recovery.

The fees sought here are reasonable compensation for the work performed, particularly given the strong result achieved for the Collective, the risk of nonpayment, and the skill and effort required to prosecute the case over more than three and a half years of litigation.  The out-of-

pocket costs are also documented and reasonably incurred.  For these reasons and as further discussed below, the parties respectfully request that the Court approve the settlement, including Plaintiffs' request for attorneys' fees and costs.

### 1.    Plaintiffs are entitled to attorneys' fees under the FLSA

The FLSA permits any judgment to include an award of reasonable attorney's fees and the costs of the action. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). This serves the FLSA's purpose of encouraging private counsel to represent employees seeking unpaid wages through collective action. *Helton v. Factor 5, Inc.*, 2015 WL 428576, at *4 (N.D. Cal. 2015) *Clover v. Shiva Realty of Mulberry, Inc*., 2011 WL 1832581 at *4 (S.D.N.Y. 2011). Plaintiffs here can be considered prevailing parties entitled to recover attorneys' fees and costs because they secured a judicially enforceable settlement that achieves a benefit sought by the suit. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 433 (1983) *superseded by statute on other grounds*.

### 2.    The Requested Fee is Reasonable Under the *Johnson* Factors

There is a general preference that parties reach an agreement regarding the fee award. *Bracamontes v. Bimbo Bakeries USA, Inc*., Case No. 15-cv-02324-RBJ-NYW, 2018 U.S. Dist. LEXIS 224097, at *9 (D. Colo. Oct. 10, 2018); *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). However, the court must nonetheless conduct an independent examination of whether the fees are reasonable. *See Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009) (holding that contingency contract between counsel and plaintiff did not abrogate court's duty to review the reasonableness of legal fees in an FLSA settlement).

In evaluating the reasonableness of a fee request, courts in the Tenth Circuit look at the following twelve factors set out in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974): (1) the time and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Brown v. Phillips Petroleum Co*., 838 F.2d 451, 454-55 (10th Cir. 1988).

Here, the Agreement provides for separate payment of up to $600,000 for Plaintiffs' attorneys' fees and costs, from which Plaintiffs are seeking attorneys' fees of $508,398.84 and reimbursement of actual out-of-pocket costs of $91,601.16. Konecky Decl. at ¶¶ 118-119. The $600,000 amount for fees and costs was negotiated after the parties reached an agreement on the $900,000 recovery for the Opt-In Plaintiffs. As discussed below, this amount is reasonable under the *Johnson* factors.

> a. *Johnson Factors (2), (3), (6), (9), & (10): the novelty and difficulty of the questions presented; the contingent nature of the fee, the skill, experience, reputation, and ability of the attorneys and the "undesirability" of the case.*

Plaintiffs' Counsel have been the only counsel to represent the Collective in this matter and have borne the entire risk and costs of litigation for over three and a half years purely on a contingency basis.  Konecky Decl. at ¶¶ 150-160. Between January 2017, when Plaintiffs' Counsel began preparing the complaint in this matter, and October 21, 2020, Plaintiffs' Counsel spent approximately 2,296.51 hours investigating, analyzing, researching, litigating, and negotiating a

favorable resolution of this case, and have incurred $91,601.16 in necessary litigation expenses. *Id*. at ¶¶ 119, 143. (This does **not** include any time spent in the earlier *Smith* action. *Id.* at ¶ 109.)

Plaintiffs' Counsel bore the substantial risk of an uncertain outcome in agreeing to prosecute this collective action case on a contingency fee basis, as well as the difficulties and delay inherent in such litigation. Konecky Decl. at ¶¶ 150-160. Aside from the challenges of marshalling class wide evidence on the misclassification issue, Plaintiffs' Counsel faced the additional hurdle of potentially needing to pursue 307 costly, individual arbitrations. *Id*. at ¶ 151. Indeed, soon after Plaintiffs achieved conditional certification of their claims, KeyPoint sought to move the vast majority of the Collective to individual arbitration based on arbitration agreements KeyPoint rolled out during the earlier *Smith* litigation. *Id*. at ¶¶ 151-152. While this formidable challenge may have compelled many other attorneys to settle early or even dissuaded them from bringing the case altogether, Plaintiffs' Counsel here continued to press the important misclassification and overtime claims of the Collective.

Moreover, Plaintiffs' Counsel are among the leading employment and class action attorneys in California and nationwide. *See* Konecky Decl. at ¶¶ 121, Exhs. 4-5. This case required experienced and competent lawyers and expertise in the issues presented herein. *See Id*. at ¶¶ 115, 121-132, 144.  To obtain such an attorney on the free market, a client must pay the market rate. *Id*.

Collective actions are complex and involve significant risk.  The challenges in this case included, among other things: a heavily contested conditional certification motion resulting in both an appeal and petition for writ by KeyPoint to the Tenth Circuit; the need to respond to extensive individualized discovery issued by KeyPoint; the need to implement an individualized outreach campaign to prepare for hundreds of individual arbitrations; and related motion practice seeking to require KeyPoint to pay for the arbitrations. *Id*. at ¶¶ 10, 153-158.

Plaintiffs' victories at the heavily contested conditional certification stage and in the lengthy settlement negotiations, bespeak the particular skill and experience of Plaintiffs' Counsel, as discussed further in the declaration of Joshua Konecky filed herewith. *See* Konecky Decl. at ¶ 158. Plaintiffs' Counsel's skill in prosecuting and resolving this case also is evidenced by the terms of the settlement ultimately achieved, discussed further below.

> b. *Johnson Factors (8): the amount involved and results obtained.*

The $900,000 Plaintiff recovery amount will bring substantial relief to the 331-person Collective. As discussed in the Konecky Declaration, the recoveries are substantial considering the damages estimates Plaintiffs could reasonably make as to the quantity of unpaid overtime hours worked by the collective as a whole, based on the discovery responses and deposition testimony the Investigators provided, and data produced by KeyPoint. *See* Konecky Decl. at ¶¶ 100-107. The evidence considered shows that the settlement recovery here may even exceed the amount of unpaid overtime that could be proved for the 331 Opt-In Plaintiffs if they prevailed on their claims at trial. *Id*. The recovery also compares very favorably with average recoveries in other wage-and-hour settlements. *See, e.g., Bower v. Cycle Gear, Inc*, No. 14-cv-02712-HSG, 2016 U.S. Dist. LEXIS 112455, at *17 (N.D. Cal. Aug. 23, 2016) (reasoning that "the results obtained for the Class Members were very favorable" where the average recovery for the FLSA overtime claim subclass was $183.70); *Pierce v. Rosetta Stone, Ltd*., No. C 11-01283, 2013 U.S. Dist. LEXIS 138921, (N.D. Cal. Sept. 26, 2013) (approving settlement of a misclassification case that resulted in an average recovery for FLSA class members of $1,778.57); *In re Am. Family Mut. Ins. Co. Overtime Pay Lit*., Case No. 06-cv-17430, 2010 WL 9593848 (D. Colo. Oct. 6, 2010) (settlement providing average award of approximately $1,250 per Collective action member), *approved at* 2010 U.S. Dist. LEXIS 145788, 2010 WL 9593857; *Salinas v. United States Xpress Enters., Inc*., No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800, at *14-15 (E.D. Tenn. Mar. 8, 2018)

(approving FLSA settlement "that will provide each opt-in Plaintiffs approximately $250 (after fees/costs/administrative expenses) for releasing these claims.").

Furthermore, the use of a three year statute of limitations (rather than two years) as a basis for the settlement figure makes this a particularly strong result, given that KeyPoint prevailed on summary judgment in the earlier *Smith* case where the Court held that the claims of Mr. Smith fell outside the statute of limitations because Mr. Smith did not raise a triable issue of fact that KeyPoint's alleged violation of the FLSA was willful to invoke the three-year limitations period 29 U.S.C. § 255(a). *See Smith*, [ECF 95] at 9.   While Plaintiffs were confident that the previous IRS finding against KeyPoint and other evidence would be sufficient to show willfulness here, it still remained a hotly contested issue.  Therefore, achieving a settlement that is substantial under even the three-year limitations period (plus additional tolling), further indicates the strength of the results obtained.

> c.   *Johnson Factors (1) & (4): Time and labor expended and preclusion of other work.*

As further discussed in the declaration of Joshua Konecky at ¶¶ 11-74, 144, Plaintiffs' Counsel undertook significant work to prosecute this case. This included investigations; drafting of pleadings; legal research on numerous complex issues; over a hundred fact-intensive interviews of the Opt-in Plaintiffs, lengthy written individualized discovery; depositions; meet and confers to resolve multiple discovery disputes; motion practice, appeals, the preparation and filing of a demand for 298 individual arbitrations and lengthy settlement negotiations. *See generally* Konecky Decl.

For example, responding to KeyPoint's extensive discovery and motion practice was an immense drain on Plaintiffs' Counsel's firm resources.   Indeed, responding to KeyPoint's individualized discovery requests to the Collective required the assistance of numerous individuals

from the firm who had not previously worked on the case. In addition, the extensive motion practice, successive challenges to Magistrate Judge Varholak's decisions and appeals throughout the case at times dominated Counsel's practice, taking up the vast majority hours billed by the lead attorneys on the case during many weeks. This distracted Counsel from other pending matters and prevented them from taking on additional meritorious cases. Konecky Decl. at ¶ 150.

After exercising billing judgment and removing all billing entries by individuals who recorded fewer than 10 hours on the case, as of October 21, 2020, Plaintiffs' Counsel has invested approximately 2,296.51 hours of work into this case, for a total lodestar of approximately $770,050.00 using rates adjusted to the Denver market. *See* Konecky Decl. at ¶ 117, 143. A breakdown of the hours worked and corresponding lodestar on a timekeeper by timekeeper basis is present in the Konecky declaration. As the declaration makes clear, the time reported was devoted to necessary and worthwhile tasks. *See id.* at ¶¶ 144-149. Additionally, tasks were delegated to associate attorneys or paralegals when reasonable. *Id.* at ¶ 149.

### 3. Plaintiffs' requested cost reimbursements are reasonable

Plaintiffs are entitled to reimbursement by KeyPoint of their out-of-pocket expenses incurred in this litigation because, as demonstrated above, they can be considered prevailing parties under Section 216(b) of the FLSA. Pursuant to the FLSA, when judgment is entered in a plaintiff's favor, the plaintiff may recover a reasonable attorney's fee as well as the costs of the action. *See* 29 U.S.C. § 216(b); Fed. R. Civ. P. 54(d)(1) ("Costs Other Than Attorney's Fees"); Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and *related nontaxable expenses*….") (emphasis added)). Even though not normally taxable as costs, out-of-pocket expenses incurred by an attorney which would normally be charged to a fee-paying client are recoverable as attorneys' fees. *Chalmers*, 796 F.2d at 1216 n.7; *Snell v. Reno Hilton Resort*, 930 F. Supp. 1428, 1434 (D. Nev. 1996); *Morales v. Farmland Foods, Inc.*, 2013 WL 1704722, at *8 (D. Neb. Apr. 18, 2013).

"Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable [in FLSA actions]." *Morales*, 2013 WL 1704722, at *7.

Here, as set forth in the accompanying Konecky Declaration, Plaintiffs' reimbursable out-of-pocket expenses include the following: (1) travel expenses; (2) document production expenses (e.g., ESI hosting, scanning, bates numbering, OCR, etc.); (3) deposition fees and transcripts; (4) postage; (5) filing and miscellaneous fees; (6) copying and printing; (7) expert fees; (8) delivery and freight; and (9) substantial fees for administering the original FLSA notice. The total reimbursable costs incurred by Plaintiffs' Counsel in this case amount to $91,601.16. Konecky Decl. at ¶¶ 163-168, Exh. 3 (item-by-item listing of costs). All of the expenses set forth above were reasonable, were necessary to the prosecution of the case, and are customarily billed to fee-paying clients.

## IV.   CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court issue an order (1) approving the settlement as set forth in Confidential Settlement Agreement and Release of Claims ("Agreement"); (2) approving the proposed Settlement Notice (attached as Exhibit B to the Agreement) and directing its distribution, and subsequent distribution of the settlement proceeds in accordance with the Agreement; (3) approving Judd's request for reasonable service awards; (4) approving Judd's request for attorneys' fees, costs, and expenses; and (5) dismissing this lawsuit with prejudice.

Respectfully submitted,

By: */s/ Margaret Parnell Hogan*                                     By:    /s/*Josh G. Konecky*
     Margaret Parnell Hogan                                           Leslie H. Joyner
     LITTLER MENDELSON, P.C.                     Josh G. Konecky
     1900 16th Street, Suite 800                   SCHNEIDER WALLACE COTTRELL
     Denver, CO  80202                           KONECKY LLP
     Telephone:  (303) 629-6200                  200 Powell Street, Suite 1400
     Facsimile:  (303) 629.0200                   Emeryville, California 94608
     Email:  mphogan@littler.com                 Telephone: 415-421-7100
                                                      ljoyner@schneiderwallace.com

     Jacqueline E. Kalk                            ATTORNEYS FOR PLAINTIFFS
     LITTLER MENDELSON, P.C.
     80 South 8th Street, Suite 1300
     Minneapolis, MN  55402
     Tele:  (612) 313-7610
     Fax:  (763) 647-7964
     Email:  JKalk@littler.com

     ATTORNEYS FOR DEFENDANT
     KEYPOINT GOVERNMENT
     SOLUTIONS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of October, 2020, a true and correct copy of the

foregoing **JOINT MOTION FOR FLSA COLLECTIVE ACTION SETTLEMENT** was filed

and served via CM/ECF on the following:

Margaret Parnell Hogan
LITTLER MENDELSON, P.C.
1900 16th Street, Suite 800
Denver, CO  80202
Telephone:  (303) 629-6200
Facsimile:   (303) 629.0200
Email:  mphogan@littler.com


Jacqueline E. Kalk
LITTLER MENDELSON, P.C.
80 South 8th Street, Suite 1300
Minneapolis, MN  55402
Tele:  (612) 313-7610
Fax:   (763) 647-7964
Email:  JKalk@littler.com

ATTORNEYS FOR DEFENDANT
KEYPOINT GOVERNMENT SOLUTIONS, INC.


*/s/ Joshua Konecky*