# Exhibit 2

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No.  18-cv-00327-RM-STV

ORSON JUDD,
individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC.,
a Delaware corporation,

      Defendant.

---

**DECLARATION OF JENNIFER M. KEOUGH**

---

      I, Jennifer M. Keough, pursuant to 28 U.S.C. 1746, hereby declare, under penalty of perjury, that the following is true and correct to the best of my personal knowledge, information, and belief:

      1.     My name is Jennifer M. Keough.  I am over the age of eighteen (18) years. I am the CEO of JND Legal Administration ("JND"), the Settlement Administrator retained in this matter. I make this Declaration under the penalty of perjury, free and voluntarily, under no coercion, threat, or intimidation, and without promise of benefit or reward. The following statements are based on my personal knowledge and information provided to me by other JND employees working under my supervision and, if called on to do so, I could and would testify consistent with the matters stated herein.

      2.     JND was provided with a list that contained the names and last-known mailing addresses and, to the extent available, email addresses for the 332 members of the collective action.

      3.     Prior to mailing the notices, JND performed additional address searches to confirm

the accuracy of the addresses of Opt-In Plaintiffs through the United States Post Office's National Change of Address database[1].

4.      On May 7, 2021, JND mailed by first-class mail, and emailed to the extent email addresses were available, the Court-approved "Notice of Settlement for Opt-In Plaintiffs" ("Notice") to members of the collective action.  JND mailed Notice to the 332 Opt-In Plaintiffs for whom addresses were provided to JND and emailed Notice to the 451 emails that were provided for the Opt-In Plaintiffs.  Some Opt-In Plaintiffs had multiple email addresses provided for them.

5.      On May 24, 2021, at counsel's request, JND completed a second, updated mailing of the Notices.

6.      As of the date of this Declaration, JND tracked three Notices from the original mailing that were returned to JND as undeliverable without a forwarding address and three Notices from the second mailing that were returned to JND as undeliverable without a forwarding address. JND also tracked one Notice from each mailing returned to JND as undeliverable with a forwarding address, and promptly remailed the Notice to the new address.  Additionally, JND tracked 15 Notices from the emailing of the Notice that were returned to JND as undeliverable.   The Notices included all of the information required to be included by the Court's April 27, 2021 Order. Representative copies of the mailed Notices are attached hereto as Exhibit A, and  representative copies of the emailed Notice are attached hereto as Exhibit B.[2]

7.      In addition, the Notice informed Opt-In Plaintiffs of the claims they would release

---

[1] The NCOA database is the official United States Postal Service ("USPS") technology product which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream.  This product is an effective tool to update address changes when a person has completed a change of address form with the USPS.  The address information is maintained in the database for 48 months.

[2] Exhibits A and B are inclusive of all versions of the Notice.  The Notice was adjusted depending upon whether JND had a fully executed W-9 for the Opt-In Plaintiff.

if the settlement was approved.

8.    The Notice gave Opt-In Plaintiffs until June 21, 2021 to object to the settlement, and it informed Opt-In Plaintiffs of the Fairness Hearing to be held in this matter, including information on how to attend if Opt-In Plaintiffs so desired.

9.    As of the date of this Declaration, no Opt-In Plaintiffs have objected to the settlement.

10.   JND's total administrative fees to date for all services rendered is $12,138.04.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 26th, 2021, in King County, Washington.

Jennifer M. Keough

# EXHIBIT A

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Case No.  18-cv-00327-RM-STV**

ORSON JUDD,
individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC.,
a Delaware corporation,

      Defendant.

---

**<u>NOTICE OF SETTLEMENT FOR OPT-IN PLAINTIFFS</u>**

**PLEASE READ THIS NOTICE CAREFULLY,
YOUR LEGAL RIGHTS WILL BE AFFECTED.**

---

**NOTICE OF SETTLEMENT FOR «Full_Name»
IN THE GROSS AMOUNT OF «BENEFIT_AMOUNT»**

---

You are receiving this Notice because you filed a "Consent to Join Form" in this lawsuit, *Orson Judd v. KeyPoint Government Solutions, Inc.*, Case No. 18-cv-00327 (RM/STV), in the United States District Court for the District of Colorado as an opt-in Plaintiff. The parties reached an agreement to settle this lawsuit ("Settlement Agreement"). The Settlement Agreement was submitted to the Court for approval, and the Court preliminarily approved the Settlement Agreement on April 27, 2021.

Your share of the Settlement is estimated to be «BENEFIT_AMOUNT» and you will be receiving a check for this settlement share in approximately 30 days after the settlement becomes effective as described below.  Your settlement payment will be reported as taxable income on an IRS Form 1099.  This Notice describes the lawsuit, the settlement details and release of the claims, and the way in which your settlement payment was calculated.  Please read it carefully as it contains important information regarding the lawsuit and settlement. Please also be sure to confirm that your address and W-9 tax information is up to date as requested in Sections VI and VII of this Notice below.

## I.    DESCRIPTION OF THE LITIGATION

On March 10, 2017, Plaintiff Orson Judd ("Judd") filed a lawsuit against KeyPoint Government Solutions, Inc. ("KeyPoint") styled *Orson Judd v. KeyPoint Government Solutions, Inc.*, Case No. 18-cv-00327 (RM/STV), in the United States District Court for the District of Colorado. In his Complaint, Judd asserted violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Judd alleges that KeyPoint violated the FLSA by misclassifying Contract Investigators, including Judd, as independent contractors and by failing to pay overtime wages. Judd brought his claims on behalf of himself as well as "similarly situated" Contract Investigators (collectively, "Plaintiffs"). Plaintiffs allege that, as a result of KeyPoint's practices, they are entitled to overtime wages that they worked but were not paid. Thereafter, collective members joined the litigation by filing consents, which are on file in the lawsuit. KeyPoint denies Plaintiffs' allegations and asserts affirmative defenses.

You are one of the collective members who worked as a Contract Investigator for KeyPoint during the applicable time period and filed a consent to join the lawsuit. As part of the "Consent to Join" form you submitted, you agreed to have Plaintiffs' counsel, Schneider Wallace Cottrell Konecky LLP, represent you in the case. In this regard, your "Consent to Join" affirmed as follows: "**I CHOOSE** the law firm of and attorneys at **SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS** as my attorneys to prosecute my wage claims in this lawsuit. I consent to having Plaintiff Orson Judd and Plaintiff's Counsel make all decisions regarding the litigation, the method and manner of conducting this litigation, the terms of any potential settlement of this litigation, the releasing of claims, to the agreement with Plaintiff's Counsel regarding attorneys' fees and costs made by Plaintiff Orson Judd and to all other matters pertaining to the lawsuit."

The Parties have conducted relevant discovery, investigated the facts, and have made a thorough study of the legal principles applicable to the claims asserted in the litigation. Based upon Plaintiffs' investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including the assessment of the uncertainties of litigation and the relative benefits conferred upon the Plaintiffs pursuant to the Settlement Agreement, Plaintiffs have concluded that the settlement with KeyPoint on the terms set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Releasing Persons.[1] The parties submitted the Settlement Agreement to the Court, which preliminarily approved the Settlement Agreement on April 27, 2021.

KeyPoint expressly denies any liability or wrongdoing of any kind associated with the claims in the litigation. KeyPoint contends that it complied with applicable federal and state law at all times. By entering into the Settlement Agreement for and on behalf of itself and the Released Persons[2],

---

[1] "Releasing Persons" means Plaintiffs, each and every one, and his or her respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest, and assigns that accepts payment of his or her pro rata share of the settlement.

[2] "Released Persons" means KeyPoint Government Solutions, Inc. and its past, present, and future parent companies, affiliates, subsidiaries, divisions, predecessors, successors, partners, owners, joint venturers, affiliated organizations, and its and each of their shareholders, insurers, reinsurers and assigns, and each of their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, employee benefits or welfare programs or plans (including the administrators, trustees, fiduciaries, and insurers of such programs or plans) sponsored or administered by KeyPoint Government Solutions, Inc. (including its affiliates), and any other persons or entities acting on its or their behalf, and any party that was or could have been named as a defendant in the litigation.

KeyPoint does not admit any liability or wrongdoing and expressly denies the same. KeyPoint states that it entered into the Settlement Agreement solely for the purpose of avoiding the costs and disruption of further litigation and denies any and all liability.

## II.    SETTLEMENT DETAILS

Under the terms of the settlement, KeyPoint will pay a non-reversionary settlement amount of $900,000 to the members of the Collective. This will be divided between the 332 collective members who submitted consent to join forms, as described in Section I above.

As stated above, your share of the settlement is estimated to be «BENEFIT_AMOUNT» if the Court approves the Settlement. Your Settlement payment is based on the number of workweeks you were engaged by KeyPoint during the applicable statute of limitations period, as adjusted based on your participation in the case.[3] Your payment was calculated by multiplying your total number of Adjusted Settlement Workweeks by your Workweek Value.[4] Your Adjusted Settlement Workweeks are «Adjusted_Workweek_Value», and your Workweek Value is «Workweek_Value».

All individual settlement payments, and service payments to Orson Judd and Kristin Hettler, will be paid from the $900,000 Plaintiff recovery amount. Service payment means the amounts to be approved by the Court for payment to Orson Judd and Kristin Hettler in recognition of their efforts on behalf of the all plaintiffs. The Court has preliminarily approved service payments in the amount of $7,500.00 to Orson Judd and $7,500.00 to Kristin Hettler.

Each final settlement payment will be allocated to claims for liquidated damages and other relief and will be characterized as non-wage income and reported on an IRS Form 1099.

In addition to the payments coming out of the $900,000 settlement amount, KeyPoint will pay an additional $600,000 for attorneys' fees and costs. KeyPoint also will separately pay the costs of settlement administration.

The Court has preliminarily approved the settlement terms described above.

---

[3] The number of Adjusted Settlement Workweeks for each Plaintiff and all Plaintiffs in the aggregate was calculated by assigning the following values to each workweek: (i) a multiplier of three to any workweek belonging to a Plaintiff was an opt in plaintiff in the *Smith v. KeyPoint* Action, which was the precursor to this Action, and who sat for deposition in that case; (ii) a multiplier of two to any workweek belonging to a Plaintiff who submitted substantive discovery responses (in addition to objections) to Defendants' Interrogatories and Requests for Production while their claims were pending in District Court or who substantially completed the written arbitration survey circulated to Plaintiffs' by Plaintiffs' Counsel; and (iii) a multiplier of one to all other Workweeks. This formula for weighting Settlement Workweeks is designed to reasonably reflect how active participation in the lawsuit by responding to discovery or arbitration surveys increased an opt-in Plaintiff's likelihood of success on his or her claims and, conversely, how those who did not participate had an increased risk of being subject to dismissal. The formula also is designed to reflect the additional delay in recovery of those individuals who originally filed their consent to join forms in the previous *Smith* litigation and appeared for deposition in that case
[4] The Workweek Value was calculated by subtracting the service payments awarded by the Court from the Total $900,000 settlement pool amount and dividing the remainder by the aggregate total number of Adjusted Settlement Workweeks.

## III.     RELEASE OF CLAIMS

The Settlement Agreement contains a release. As a named-Plaintiff or Opt-In Plaintiff, you and the Releasing Persons shall be deemed to forever completely settle, compromise, release, and discharge KeyPoint and the Released Persons from any and all wage claims based on alleged independent contractor misclassification that were pled or which could have been pleaded based on the facts alleged in the Litigation, which accrued at any time on or before October 26, 2020.

Once the Court finally approves the Settlement Agreement, you will be bound by the terms and conditions of the Settlement Agreement, the Court's Approval Order, the judgment, and the release set forth herein. You may obtain a copy of these documents by contacting the Plaintiffs' lawyers listed in Section VIII below. The release of claims will have the same force and effect upon Plaintiffs as if the Settlement Agreement was executed by each Plaintiff.

## IV.     OBJECTING TO THE SETTLEMENT

You may object to the Settlement.  If you object and the Court finally approves the Settlement, you will receive a settlement payment, be legally bound by all orders and judgments entered by the Court, and will not be able to sue, or continue to sue, the Released Parties in any lawsuit relating to the alleged misclassification of Contract Investigators or the alleged failure to pay overtime wages. To object to the Settlement, you must send a letter describing the reasons for your objection. This letter must include your name, address, telephone number, and the last four digits of your social security number.  The letter must be mailed to the following address:  PO Box 91244, Seattle, WA 98111.  To be valid, the letter must be postmarked by June 21, 2021.  Finally, if you object to the settlement, you are entitled to appear at that Fairness Hearing and will be provided with an opportunity to further explain the basis for your objection to the Court.

## V.     FINAL FAIRNESS HEARING

The Court will hold the Fairness Hearing on **Monday, August 16, 2021, at 9:00 a.m.** at the Alfred A. Arraj Courthouse, 901 19th Street, Courtroom A601, Sixth Floor, Denver, Colorado 80294. Any collective Member objecting to the proposed settlement shall appear in-person at the hearing.[5] All other Collective Members and the public may listen to the hearing by calling **Toll Free:  888-636-3807**, with **Access Code:  4296144#**.

At the final fairness hearing, the Court will review the papers submitted by the Parties and any objectors, and hear any properly noticed witnesses.  The Court will decide either at or after the fairness hearing whether to grant final approval of the settlement, and will issue a written order of its decision.

Any Opt-In Plaintiff may attend the hearing, but you do not need to do so in order to receive your individual payment amount.  If you object to the settlement, you may submit your objections, as detailed above, along with any supporting documents, and declare your intent to appear at the

---

[5] Depending on the number of objectors and the status of the COVID-19 pandemic, the Court may require objectors to appear via video conference rather than in-person for the hearing.  The Court will provide notice of any changes as soon as practicable.

fairness hearing, either personally or through an attorney.

If the Court grants final approval, the Settlement Agreement will become effective after expiration of the time for all appeals of the Court's final approval order or, if an appeal is filed, a final determination that the Settlement should be approved. If you are eligible for an individual settlement amount, it will be distributed to you within 30 days after the Settlement becomes effective.

## VI.    ADDRESS INFORMATION

JND Legal Administration is acting as the third party administrator of the Settlement Agreement (the "Third Party Administrator"). The Third Party Administrator has «CF_ADDRESS_1» «CF_ADDRESS_2», «CF_CITY», «CF_STATE» «CF_ZIP» as your current mailing address. If you would like to receive your payment after the Court approves the Settlement or any other correspondence regarding this lawsuit or the Settlement Agreement at a different address, please provide that address to the Third Party Administrator by mail at PO Box 91244, Seattle, WA 98111 or by email at JuddvKeyPoint@jnd.legal.

## VII.    W-9 TAX FORM INFORMATION

KeyPoint has not provided the Third Party administrator with a W-9 Form for you. You must complete a W-9 Form in order to receive your settlement payment. To do so, please return your completed W-9 form by mail at PO Box 91244, Seattle, WA 98111 or by email at JuddvKeyPoint@jnd.legal.

You are solely responsible for paying taxes based on your receipt of a settlement payment. Neither your attorneys nor KeyPoint's attorneys can provide any advice about such tax payments. You should consult your tax advisor if you have questions about the tax consequences of your individual settlement payments.

## VIII.    ADDITIONAL INFORMATION

This Notice is a summary of your legal rights. Questions about the settlement, or requests for additional information or a copy of the Settlement Agreement, or requests for copies of the pleadings and other records in the litigation should be directed to Plaintiffs' counsel, Schneider Wallace Cottrell Konecky LLP, Joshua G. Konecky, 200 Powell Street, Suite 1400, Emeryville, CA 94608, (Telephone): 415-421-7100, (Email): jkonecky@schneiderwallace.com.

**PLEASE DO NOT TELEPHONE THE COURT FOR INFORMATION REGARDING
THIS SETTLEMENT**

Judd v. KeyPoint Settlement Administrator
c/o JND Legal Administration
PO Box 91244
Seattle, WA 98111

«Full_Name»
«CF_ADDRESS_1»
«CF_ADDRESS_2»
«CF_CITY», «CF_STATE» «CF_ZIP»
«CF_COUNTRY»

«CF_PRINTED_ID»

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Case No.  18-cv-00327-RM-STV**

ORSON JUDD,
individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC.,
a Delaware corporation,

      Defendant.

---

<u>**NOTICE OF SETTLEMENT FOR OPT-IN PLAINTIFFS**</u>

**PLEASE READ THIS NOTICE CAREFULLY,
YOUR LEGAL RIGHTS WILL BE AFFECTED.**

---

**NOTICE OF SETTLEMENT FOR «Full_Name»
IN THE GROSS AMOUNT OF «BENEFIT_AMOUNT»**

---

You are receiving this Notice because you filed a "Consent to Join Form" in this lawsuit, *Orson Judd v. KeyPoint Government Solutions, Inc.*, Case No. 18-cv-00327 (RM/STV), in the United States District Court for the District of Colorado as an opt-in Plaintiff. The parties reached an agreement to settle this lawsuit ("Settlement Agreement"). The Settlement Agreement was submitted to the Court for approval, and the Court preliminarily approved the Settlement Agreement on April 27, 2021.

Your share of the Settlement is estimated to be «BENEFIT_AMOUNT» and you will be receiving a check for this settlement share in approximately 30 days after the settlement becomes effective as described below.  Your settlement payment will be reported as taxable income on an IRS Form 1099.  This Notice describes the lawsuit, the settlement details and release of the claims, and the way in which your settlement payment was calculated.  Please read it carefully as it contains important information regarding the lawsuit and settlement. Please also be sure to confirm that your address and W-9 tax information is up to date as requested in Sections VI and VII of this Notice below.

## I.    DESCRIPTION OF THE LITIGATION

On March 10, 2017, Plaintiff Orson Judd ("Judd") filed a lawsuit against KeyPoint Government Solutions, Inc. ("KeyPoint") styled *Orson Judd v. KeyPoint Government Solutions, Inc.*, Case No. 18-cv-00327 (RM/STV), in the United States District Court for the District of Colorado. In his Complaint, Judd asserted violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Judd alleges that KeyPoint violated the FLSA by misclassifying Contract Investigators, including Judd, as independent contractors and by failing to pay overtime wages. Judd brought his claims on behalf of himself as well as "similarly situated" Contract Investigators (collectively, "Plaintiffs"). Plaintiffs allege that, as a result of KeyPoint's practices, they are entitled to overtime wages that they worked but were not paid. Thereafter, collective members joined the litigation by filing consents, which are on file in the lawsuit. KeyPoint denies Plaintiffs' allegations and asserts affirmative defenses.

You are one of the collective members who worked as a Contract Investigator for KeyPoint during the applicable time period and filed a consent to join the lawsuit. As part of the "Consent to Join" form you submitted, you agreed to have Plaintiffs' counsel, Schneider Wallace Cottrell Konecky LLP, represent you in the case. In this regard, your "Consent to Join" affirmed as follows: "**I CHOOSE** the law firm of and attorneys at **SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS** as my attorneys to prosecute my wage claims in this lawsuit. I consent to having Plaintiff Orson Judd and Plaintiff's Counsel make all decisions regarding the litigation, the method and manner of conducting this litigation, the terms of any potential settlement of this litigation, the releasing of claims, to the agreement with Plaintiff's Counsel regarding attorneys' fees and costs made by Plaintiff Orson Judd and to all other matters pertaining to the lawsuit."

The Parties have conducted relevant discovery, investigated the facts, and have made a thorough study of the legal principles applicable to the claims asserted in the litigation. Based upon Plaintiffs' investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including the assessment of the uncertainties of litigation and the relative benefits conferred upon the Plaintiffs pursuant to the Settlement Agreement, Plaintiffs have concluded that the settlement with KeyPoint on the terms set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Releasing Persons.[1] The parties submitted the Settlement Agreement to the Court, which preliminarily approved the Settlement Agreement on April 27, 2021.

KeyPoint expressly denies any liability or wrongdoing of any kind associated with the claims in the litigation. KeyPoint contends that it complied with applicable federal and state law at all times. By entering into the Settlement Agreement for and on behalf of itself and the Released Persons[2],

---

[1] "Releasing Persons" means Plaintiffs, each and every one, and his or her respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest, and assigns that accepts payment of his or her pro rata share of the settlement.

[2] "Released Persons" means KeyPoint Government Solutions, Inc. and its past, present, and future parent companies, affiliates, subsidiaries, divisions, predecessors, successors, partners, owners, joint venturers, affiliated organizations, and its and each of their shareholders, insurers, reinsurers and assigns, and each of their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, employee benefits or welfare programs or plans (including the administrators, trustees, fiduciaries, and insurers of such programs or plans) sponsored or administered by KeyPoint Government Solutions, Inc. (including its affiliates), and any other persons or entities acting on its or their behalf, and any party that was or could have been named as a defendant in the litigation.

KeyPoint does not admit any liability or wrongdoing and expressly denies the same. KeyPoint states that it entered into the Settlement Agreement solely for the purpose of avoiding the costs and disruption of further litigation and denies any and all liability.

## II.    SETTLEMENT DETAILS

Under the terms of the settlement, KeyPoint will pay a non-reversionary settlement amount of $900,000 to the members of the Collective. This will be divided between the 332 collective members who submitted consent to join forms, as described in Section I above.

As stated above, your share of the settlement is estimated to be «BENEFIT_AMOUNT» if the Court approves the Settlement. Your Settlement payment is based on the number of workweeks you were engaged by KeyPoint during the applicable statute of limitations period, as adjusted based on your participation in the case.[3] Your payment was calculated by multiplying your total number of Adjusted Settlement Workweeks by your Workweek Value.[4] Your Adjusted Settlement Workweeks are «Adjusted_Workweek_Value», and your Workweek Value is «Workweek_Value».

All individual settlement payments, and service payments to Orson Judd and Kristin Hettler, will be paid from the $900,000 Plaintiff recovery amount. Service payment means the amounts to be approved by the Court for payment to Orson Judd and Kristin Hettler in recognition of their efforts on behalf of the all plaintiffs. The Court has preliminarily approved service payments in the amount of $7,500.00 to Orson Judd and $7,500.00 to Kristin Hettler.

Each final settlement payment will be allocated to claims for liquidated damages and other relief and will be characterized as non-wage income and reported on an IRS Form 1099.

In addition to the payments coming out of the $900,000 settlement amount, KeyPoint will pay an additional $600,000 for attorneys' fees and costs. KeyPoint also will separately pay the costs of settlement administration.

The Court has preliminarily approved the settlement terms described above.

---

[3] The number of Adjusted Settlement Workweeks for each Plaintiff and all Plaintiffs in the aggregate was calculated by assigning the following values to each workweek: (i) a multiplier of three to any workweek belonging to a Plaintiff was an opt in plaintiff in the *Smith v. KeyPoint* Action, which was the precursor to this Action, and who sat for deposition in that case; (ii) a multiplier of two to any workweek belonging to a Plaintiff who submitted substantive discovery responses (in addition to objections) to Defendants' Interrogatories and Requests for Production while their claims were pending in District Court or who substantially completed the written arbitration survey circulated to Plaintiffs' by Plaintiffs' Counsel; and (iii) a multiplier of one to all other Workweeks. This formula for weighting Settlement Workweeks is designed to reasonably reflect how active participation in the lawsuit by responding to discovery or arbitration surveys increased an opt-in Plaintiff's likelihood of success on his or her claims and, conversely, how those who did not participate had an increased risk of being subject to dismissal. The formula also is designed to reflect the additional delay in recovery of those individuals who originally filed their consent to join forms in the previous *Smith* litigation and appeared for deposition in that case
[4] The Workweek Value was calculated by subtracting the service payments awarded by the Court from the Total $900,000 settlement pool amount and dividing the remainder by the aggregate total number of Adjusted Settlement Workweeks.

## III.     RELEASE OF CLAIMS

The Settlement Agreement contains a release. As a named-Plaintiff or Opt-In Plaintiff, you and the Releasing Persons shall be deemed to forever completely settle, compromise, release, and discharge KeyPoint and the Released Persons from any and all wage claims based on alleged independent contractor misclassification that were pled or which could have been pleaded based on the facts alleged in the Litigation, which accrued at any time on or before October 26, 2020.

Once the Court finally approves the Settlement Agreement, you will be bound by the terms and conditions of the Settlement Agreement, the Court's Approval Order, the judgment, and the release set forth herein. You may obtain a copy of these documents by contacting the Plaintiffs' lawyers listed in Section VIII below. The release of claims will have the same force and effect upon Plaintiffs as if the Settlement Agreement was executed by each Plaintiff.

## IV.     OBJECTING TO THE SETTLEMENT

You may object to the Settlement.  If you object and the Court finally approves the Settlement, you will receive a settlement payment, be legally bound by all orders and judgments entered by the Court, and will not be able to sue, or continue to sue, the Released Parties in any lawsuit relating to the alleged misclassification of Contract Investigators or the alleged failure to pay overtime wages. To object to the Settlement, you must send a letter describing the reasons for your objection. This letter must include your name, address, telephone number, and the last four digits of your social security number.  The letter must be mailed to the following address:  PO Box 91244, Seattle, WA 98111.  To be valid, the letter must be postmarked by June 21, 2021.  Finally, if you object to the settlement, you are entitled to appear at that Fairness Hearing and will be provided with an opportunity to further explain the basis for your objection to the Court.

## V.     FINAL FAIRNESS HEARING

The Court will hold the Fairness Hearing on **Monday, August 16, 2021, at 9:00 a.m.** at the Alfred A. Arraj Courthouse, 901 19th Street, Courtroom A601, Sixth Floor, Denver, Colorado 80294. Any collective Member objecting to the proposed settlement shall appear in-person at the hearing.[5] All other Collective Members and the public may listen to the hearing by calling **Toll Free: 888-636-3807**, with **Access Code: 4296144#**.

At the final fairness hearing, the Court will review the papers submitted by the Parties and any objectors, and hear any properly noticed witnesses.  The Court will decide either at or after the fairness hearing whether to grant final approval of the settlement, and will issue a written order of its decision.

Any Opt-In Plaintiff may attend the hearing, but you do not need to do so in order to receive your individual payment amount.  If you object to the settlement, you may submit your objections, as detailed above, along with any supporting documents, and declare your intent to appear at the

---

[5] Depending on the number of objectors and the status of the COVID-19 pandemic, the Court may require objectors to appear via video conference rather than in-person for the hearing.  The Court will provide notice of any changes as soon as practicable.

fairness hearing, either personally or through an attorney.

If the Court grants final approval, the Settlement Agreement will become effective after expiration of the time for all appeals of the Court's final approval order or, if an appeal is filed, a final determination that the Settlement should be approved. If you are eligible for an individual settlement amount, it will be distributed to you within 30 days after the Settlement becomes effective.

## VI.    ADDRESS INFORMATION

JND Legal Administration is acting as the third party administrator of the Settlement Agreement (the "Third Party Administrator"). The Third Party Administrator has «CF_ADDRESS_1» «CF_ADDRESS_2», «CF_CITY», «CF_STATE» «CF_ZIP» as your current mailing address. If you would like to receive your payment after the Court approves the Settlement or any other correspondence regarding this lawsuit or the Settlement Agreement at a different address, please provide that address to the Third Party Administrator by mail at PO Box 91244, Seattle, WA 98111 or by email at JuddvKeyPoint@jnd.legal.

## VII.    W-9 TAX FORM INFORMATION

KeyPoint has provided the Third Party administrator with a W-9 Form for you.

You are solely responsible for paying taxes based on your receipt of a settlement payment. Neither your attorneys nor KeyPoint's attorneys can provide any advice about such tax payments. You should consult your tax advisor if you have questions about the tax consequences of your individual settlement payments.

## VIII.   ADDITIONAL INFORMATION

This Notice is a summary of your legal rights. Questions about the settlement, or requests for additional information or a copy of the Settlement Agreement, or requests for copies of the pleadings and other records in the litigation should be directed to Plaintiffs' counsel, Schneider Wallace Cottrell Konecky LLP, Joshua G. Konecky, 200 Powell Street, Suite 1400, Emeryville, CA 94608, (Telephone): 415-421-7100, (Email): jkonecky@schneiderwallace.com.


**PLEASE DO NOT TELEPHONE THE COURT FOR INFORMATION REGARDING
THIS SETTLEMENT**

Judd v. KeyPoint Settlement Administrator
c/o JND Legal Administration
PO Box 91244
Seattle, WA 98111

«Full_Name»
«CF_ADDRESS_1»
«CF_ADDRESS_2»
«CF_CITY», «CF_STATE» «CF_ZIP»
«CF_COUNTRY»

«CF_PRINTED_ID»

***Judd v. KeyPoint Government Solutions* Settlement Administrator**
c/o JND Legal Administration
PO Box 91244
Seattle, WA 98111

May 24, 2021

Dear «Full_Name»,

Enclosed please find an updated Notice of Settlement for the case of Orson Judd v. KeyPoint
Government Solutions, Inc., Case No. 18-cv-00327 (RM/STV). We previously sent you the
Notice of Settlement for this matter on May 7, 2021.  We are now sending you this updated
Notice because of a data error discovered in the Workweek Value used to calculate the estimated
shares for you and the other collective members.  The updated Workweek Value and your
updated estimated share of the settlement are shown in this updated Notice of Settlement.  There
are no other changes.

If you have any questions about the settlement or request additional information, please contact
Plaintiffs' counsel at the address, telephone number and/or email address listed at the end of
Section VIII of this Notice.

Thank you very much.

*Judd v. KeyPoint Government Solutions* Settlement Administrator

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Case No.  18-cv-00327-RM-STV**

ORSON JUDD,
individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC.,
a Delaware corporation,

      Defendant.

---

**<u>NOTICE OF SETTLEMENT FOR OPT-IN PLAINTIFFS</u>**

**PLEASE READ THIS NOTICE CAREFULLY,
YOUR LEGAL RIGHTS WILL BE AFFECTED.**

---

**NOTICE OF SETTLEMENT FOR «Full_Name»
IN THE GROSS AMOUNT OF «BENEFIT_AMOUNT»**

---

You are receiving this Notice because you filed a "Consent to Join Form" in this lawsuit, *Orson Judd v. KeyPoint Government Solutions, Inc.*, Case No. 18-cv-00327 (RM/STV), in the United States District Court for the District of Colorado as an opt-in Plaintiff. The parties reached an agreement to settle this lawsuit ("Settlement Agreement"). The Settlement Agreement was submitted to the Court for approval, and the Court preliminarily approved the Settlement Agreement on April 27, 2021.

Your share of the Settlement is estimated to be «BENEFIT_AMOUNT» and you will be receiving a check for this settlement share in approximately 30 days after the settlement becomes effective as described below.  Your settlement payment will be reported as taxable income on an IRS Form 1099.  This Notice describes the lawsuit, the settlement details and release of the claims, and the way in which your settlement payment was calculated.  Please read it carefully as it contains important information regarding the lawsuit and settlement. Please also be sure to confirm that your address and W-9 tax information is up to date as requested in Sections VI and VII of this Notice below.

## I.      DESCRIPTION OF THE LITIGATION

On March 10, 2017, Plaintiff Orson Judd ("Judd") filed a lawsuit against KeyPoint Government Solutions, Inc. ("KeyPoint") styled *Orson Judd v. KeyPoint Government Solutions, Inc.*, Case No. 18-cv-00327 (RM/STV), in the United States District Court for the District of Colorado. In his Complaint, Judd asserted violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Judd alleges that KeyPoint violated the FLSA by misclassifying Contract Investigators, including Judd, as independent contractors and by failing to pay overtime wages. Judd brought his claims on behalf of himself as well as "similarly situated" Contract Investigators (collectively, "Plaintiffs"). Plaintiffs allege that, as a result of KeyPoint's practices, they are entitled to overtime wages that they worked but were not paid. Thereafter, collective members joined the litigation by filing consents, which are on file in the lawsuit. KeyPoint denies Plaintiffs' allegations and asserts affirmative defenses.

You are one of the collective members who worked as a Contract Investigator for KeyPoint during the applicable time period and filed a consent to join the lawsuit. As part of the "Consent to Join" form you submitted, you agreed to have Plaintiffs' counsel, Schneider Wallace Cottrell Konecky LLP, represent you in the case. In this regard, your "Consent to Join" affirmed as follows: "**I CHOOSE** the law firm of and attorneys at **SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS** as my attorneys to prosecute my wage claims in this lawsuit. I consent to having Plaintiff Orson Judd and Plaintiff's Counsel make all decisions regarding the litigation, the method and manner of conducting this litigation, the terms of any potential settlement of this litigation, the releasing of claims, to the agreement with Plaintiff's Counsel regarding attorneys' fees and costs made by Plaintiff Orson Judd and to all other matters pertaining to the lawsuit."

The Parties have conducted relevant discovery, investigated the facts, and have made a thorough study of the legal principles applicable to the claims asserted in the litigation. Based upon Plaintiffs' investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including the assessment of the uncertainties of litigation and the relative benefits conferred upon the Plaintiffs pursuant to the Settlement Agreement, Plaintiffs have concluded that the settlement with KeyPoint on the terms set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Releasing Persons.[1] The parties submitted the Settlement Agreement to the Court, which preliminarily approved the Settlement Agreement on April 27, 2021.

KeyPoint expressly denies any liability or wrongdoing of any kind associated with the claims in the litigation. KeyPoint contends that it complied with applicable federal and state law at all times. By entering into the Settlement Agreement for and on behalf of itself and the Released Persons[2],

---

[1] "Releasing Persons" means Plaintiffs, each and every one, and his or her respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest, and assigns that accepts payment of his or her pro rata share of the settlement.

[2] "Released Persons" means KeyPoint Government Solutions, Inc. and its past, present, and future parent companies, affiliates, subsidiaries, divisions, predecessors, successors, partners, owners, joint venturers, affiliated organizations, and its and each of their shareholders, insurers, reinsurers and assigns, and each of their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, employee benefits or welfare programs or plans (including the administrators, trustees, fiduciaries, and insurers of such programs or plans) sponsored or administered by KeyPoint Government Solutions, Inc. (including its affiliates), and any other persons or entities acting on its or their behalf, and any party that was or could have been named as a defendant in the litigation.

KeyPoint does not admit any liability or wrongdoing and expressly denies the same. KeyPoint states that it entered into the Settlement Agreement solely for the purpose of avoiding the costs and disruption of further litigation and denies any and all liability.

## II.     SETTLEMENT DETAILS

Under the terms of the settlement, KeyPoint will pay a non-reversionary settlement amount of $900,000 to the members of the Collective. This will be divided between the 332 collective members who submitted consent to join forms, as described in Section I above.

As stated above, your share of the settlement is estimated to be «BENEFIT_AMOUNT» if the Court approves the Settlement. Your Settlement payment is based on the number of workweeks you were engaged by KeyPoint during the applicable statute of limitations period, as adjusted based on your participation in the case.[3] Your payment was calculated by multiplying your total number of Adjusted Settlement Workweeks by your Workweek Value.[4] Your Adjusted Settlement Workweeks are «Adjusted_Workweek_Value», and your Workweek Value is «Workweek_Value».

All individual settlement payments, and service payments to Orson Judd and Kristin Hettler, will be paid from the $900,000 Plaintiff recovery amount. Service payment means the amounts to be approved by the Court for payment to Orson Judd and Kristin Hettler in recognition of their efforts on behalf of the all plaintiffs. The Court has preliminarily approved service payments in the amount of $7,500.00 to Orson Judd and $7,500.00 to Kristin Hettler.

Each final settlement payment will be allocated to claims for liquidated damages and other relief and will be characterized as non-wage income and reported on an IRS Form 1099.

In addition to the payments coming out of the $900,000 settlement amount, KeyPoint will pay an additional $600,000 for attorneys' fees and costs. KeyPoint also will separately pay the costs of settlement administration.

The Court has preliminarily approved the settlement terms described above.

---

[3] The number of Adjusted Settlement Workweeks for each Plaintiff and all Plaintiffs in the aggregate was calculated by assigning the following values to each workweek: (i) a multiplier of three to any workweek belonging to a Plaintiff was an opt in plaintiff in the *Smith v. KeyPoint* Action, which was the precursor to this Action, and who sat for deposition in that case; (ii) a multiplier of two to any workweek belonging to a Plaintiff who submitted substantive discovery responses (in addition to objections) to Defendants' Interrogatories and Requests for Production while their claims were pending in District Court or who substantially completed the written arbitration survey circulated to Plaintiffs' by Plaintiffs' Counsel; and (iii) a multiplier of one to all other Workweeks. This formula for weighting Settlement Workweeks is designed to reasonably reflect how active participation in the lawsuit by responding to discovery or arbitration surveys increased an opt-in Plaintiff's likelihood of success on his or her claims and, conversely, how those who did not participate had an increased risk of being subject to dismissal. The formula also is designed to reflect the additional delay in recovery of those individuals who originally filed their consent to join forms in the previous *Smith* litigation and appeared for deposition in that case
[4] The Workweek Value was calculated by subtracting the service payments awarded by the Court from the Total $900,000 settlement pool amount and dividing the remainder by the aggregate total number of Adjusted Settlement Workweeks.

## III.    RELEASE OF CLAIMS

The Settlement Agreement contains a release. As a named-Plaintiff or Opt-In Plaintiff, you and the Releasing Persons shall be deemed to forever completely settle, compromise, release, and discharge KeyPoint and the Released Persons from any and all wage claims based on alleged independent contractor misclassification that were pled or which could have been pleaded based on the facts alleged in the Litigation, which accrued at any time on or before October 26, 2020.

Once the Court finally approves the Settlement Agreement, you will be bound by the terms and conditions of the Settlement Agreement, the Court's Approval Order, the judgment, and the release set forth herein. You may obtain a copy of these documents by contacting the Plaintiffs' lawyers listed in Section VIII below. The release of claims will have the same force and effect upon Plaintiffs as if the Settlement Agreement was executed by each Plaintiff.

## IV.    OBJECTING TO THE SETTLEMENT

You may object to the Settlement.  If you object and the Court finally approves the Settlement, you will receive a settlement payment, be legally bound by all orders and judgments entered by the Court, and will not be able to sue, or continue to sue, the Released Parties in any lawsuit relating to the alleged misclassification of Contract Investigators or the alleged failure to pay overtime wages. To object to the Settlement, you must send a letter describing the reasons for your objection. This letter must include your name, address, telephone number, and the last four digits of your social security number.  The letter must be mailed to the following address:  PO Box 91244, Seattle, WA 98111.  To be valid, the letter must be postmarked by June 21, 2021.  Finally, if you object to the settlement, you are entitled to appear at that Fairness Hearing and will be provided with an opportunity to further explain the basis for your objection to the Court.

## V.    FINAL FAIRNESS HEARING

The Court will hold the Fairness Hearing on **Monday, August 16, 2021, at 9:00 a.m.** at the Alfred A. Arraj Courthouse, 901 19th Street, Courtroom A601, Sixth Floor, Denver, Colorado 80294. Any collective Member objecting to the proposed settlement shall appear in-person at the hearing.[5] All other Collective Members and the public may listen to the hearing by calling **Toll Free:  888-636-3807**, with **Access Code:  4296144#**.

At the final fairness hearing, the Court will review the papers submitted by the Parties and any objectors, and hear any properly noticed witnesses.  The Court will decide either at or after the fairness hearing whether to grant final approval of the settlement, and will issue a written order of its decision.

Any Opt-In Plaintiff may attend the hearing, but you do not need to do so in order to receive your individual payment amount.  If you object to the settlement, you may submit your objections, as detailed above, along with any supporting documents, and declare your intent to appear at the

---

[5] Depending on the number of objectors and the status of the COVID-19 pandemic, the Court may require objectors to appear via video conference rather than in-person for the hearing.  The Court will provide notice of any changes as soon as practicable.

fairness hearing, either personally or through an attorney.

If the Court grants final approval, the Settlement Agreement will become effective after expiration of the time for all appeals of the Court's final approval order or, if an appeal is filed, a final determination that the Settlement should be approved. If you are eligible for an individual settlement amount, it will be distributed to you within 30 days after the Settlement becomes effective.

## VI.    ADDRESS INFORMATION

JND Legal Administration is acting as the third party administrator of the Settlement Agreement (the "Third Party Administrator"). The Third Party Administrator has «CF_ADDRESS_1» «CF_ADDRESS_2», «CF_CITY», «CF_STATE» «CF_ZIP» as your current mailing address. If you would like to receive your payment after the Court approves the Settlement or any other correspondence regarding this lawsuit or the Settlement Agreement at a different address, please provide that address to the Third Party Administrator by mail at PO Box 91244, Seattle, WA 98111 or by email at JuddvKeyPoint@jnd.legal.

## VII.   W-9 TAX FORM INFORMATION

KeyPoint has not provided the Third Party administrator with a W-9 Form for you. You must complete a W-9 Form in order to receive your settlement payment. To do so, please return your completed W-9 form by mail at PO Box 91244, Seattle, WA 98111 or by email at JuddvKeyPoint@jnd.legal.

You are solely responsible for paying taxes based on your receipt of a settlement payment. Neither your attorneys nor KeyPoint's attorneys can provide any advice about such tax payments. You should consult your tax advisor if you have questions about the tax consequences of your individual settlement payments.

## VIII.  ADDITIONAL INFORMATION

This Notice is a summary of your legal rights. Questions about the settlement, or requests for additional information or a copy of the Settlement Agreement, or requests for copies of the pleadings and other records in the litigation should be directed to Plaintiffs' counsel, Schneider Wallace Cottrell Konecky LLP, Joshua G. Konecky, 200 Powell Street, Suite 1400, Emeryville, CA 94608, (Telephone): 415-421-7100, (Email): jkonecky@schneiderwallace.com.

**PLEASE DO NOT TELEPHONE THE COURT FOR INFORMATION REGARDING THIS SETTLEMENT**

***Judd v. KeyPoint Government Solutions* Settlement Administrator**
c/o JND Legal Administration
PO Box 91244
Seattle, WA 98111

---

May 24, 2021

Dear «Full_Name»,

Enclosed please find an updated Notice of Settlement for the case of Orson Judd v. KeyPoint
Government Solutions, Inc., Case No. 18-cv-00327 (RM/STV). We previously sent you the
Notice of Settlement for this matter on May 7, 2021. We are now sending you this updated
Notice because of a data error discovered in the Workweek Value used to calculate the estimated
shares for you and the other collective members. The updated Workweek Value and your
updated estimated share of the settlement are shown in this updated Notice of Settlement. There
are no other changes.

If you have any questions about the settlement or request additional information, please contact
Plaintiffs' counsel at the address, telephone number and/or email address listed at the end of
Section VIII of this Notice.

Thank you very much.

*Judd v. KeyPoint Government Solutions* Settlement Administrator

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Case No.  18-cv-00327-RM-STV**

ORSON JUDD,
individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC.,
a Delaware corporation,

      Defendant.

---

**<u>NOTICE OF SETTLEMENT FOR OPT-IN PLAINTIFFS</u>**

**PLEASE READ THIS NOTICE CAREFULLY,
YOUR LEGAL RIGHTS WILL BE AFFECTED.**

---

**NOTICE OF SETTLEMENT FOR «Full_Name»
IN THE GROSS AMOUNT OF «BENEFIT_AMOUNT»**

---

You are receiving this Notice because you filed a "Consent to Join Form" in this lawsuit, *Orson Judd v. KeyPoint Government Solutions, Inc.*, Case No. 18-cv-00327 (RM/STV), in the United States District Court for the District of Colorado as an opt-in Plaintiff. The parties reached an agreement to settle this lawsuit ("Settlement Agreement"). The Settlement Agreement was submitted to the Court for approval, and the Court preliminarily approved the Settlement Agreement on April 27, 2021.

Your share of the Settlement is estimated to be «BENEFIT_AMOUNT» and you will be receiving a check for this settlement share in approximately 30 days after the settlement becomes effective as described below.  Your settlement payment will be reported as taxable income on an IRS Form 1099.  This Notice describes the lawsuit, the settlement details and release of the claims, and the way in which your settlement payment was calculated.  Please read it carefully as it contains important information regarding the lawsuit and settlement. Please also be sure to confirm that your address and W-9 tax information is up to date as requested in Sections VI and VII of this Notice below.

## I.    DESCRIPTION OF THE LITIGATION

On March 10, 2017, Plaintiff Orson Judd ("Judd") filed a lawsuit against KeyPoint Government Solutions, Inc. ("KeyPoint") styled *Orson Judd v. KeyPoint Government Solutions, Inc.*, Case No. 18-cv-00327 (RM/STV), in the United States District Court for the District of Colorado. In his Complaint, Judd asserted violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Judd alleges that KeyPoint violated the FLSA by misclassifying Contract Investigators, including Judd, as independent contractors and by failing to pay overtime wages. Judd brought his claims on behalf of himself as well as "similarly situated" Contract Investigators (collectively, "Plaintiffs"). Plaintiffs allege that, as a result of KeyPoint's practices, they are entitled to overtime wages that they worked but were not paid. Thereafter, collective members joined the litigation by filing consents, which are on file in the lawsuit. KeyPoint denies Plaintiffs' allegations and asserts affirmative defenses.

You are one of the collective members who worked as a Contract Investigator for KeyPoint during the applicable time period and filed a consent to join the lawsuit. As part of the "Consent to Join" form you submitted, you agreed to have Plaintiffs' counsel, Schneider Wallace Cottrell Konecky LLP, represent you in the case. In this regard, your "Consent to Join" affirmed as follows: "**I CHOOSE** the law firm of and attorneys at **SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS** as my attorneys to prosecute my wage claims in this lawsuit. I consent to having Plaintiff Orson Judd and Plaintiff's Counsel make all decisions regarding the litigation, the method and manner of conducting this litigation, the terms of any potential settlement of this litigation, the releasing of claims, to the agreement with Plaintiff's Counsel regarding attorneys' fees and costs made by Plaintiff Orson Judd and to all other matters pertaining to the lawsuit."

The Parties have conducted relevant discovery, investigated the facts, and have made a thorough study of the legal principles applicable to the claims asserted in the litigation. Based upon Plaintiffs' investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including the assessment of the uncertainties of litigation and the relative benefits conferred upon the Plaintiffs pursuant to the Settlement Agreement, Plaintiffs have concluded that the settlement with KeyPoint on the terms set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Releasing Persons.[1] The parties submitted the Settlement Agreement to the Court, which preliminarily approved the Settlement Agreement on April 27, 2021.

KeyPoint expressly denies any liability or wrongdoing of any kind associated with the claims in the litigation. KeyPoint contends that it complied with applicable federal and state law at all times. By entering into the Settlement Agreement for and on behalf of itself and the Released Persons[2],

---

[1] "Releasing Persons" means Plaintiffs, each and every one, and his or her respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest, and assigns that accepts payment of his or her pro rata share of the settlement.

[2] "Released Persons" means KeyPoint Government Solutions, Inc. and its past, present, and future parent companies, affiliates, subsidiaries, divisions, predecessors, successors, partners, owners, joint venturers, affiliated organizations, and its and each of their shareholders, insurers, reinsurers and assigns, and each of their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, employee benefits or welfare programs or plans (including the administrators, trustees, fiduciaries, and insurers of such programs or plans) sponsored or administered by KeyPoint Government Solutions, Inc. (including its affiliates), and any other persons or entities acting on its or their behalf, and any party that was or could have been named as a defendant in the litigation.

KeyPoint does not admit any liability or wrongdoing and expressly denies the same. KeyPoint states that it entered into the Settlement Agreement solely for the purpose of avoiding the costs and disruption of further litigation and denies any and all liability.

## II.    SETTLEMENT DETAILS

Under the terms of the settlement, KeyPoint will pay a non-reversionary settlement amount of $900,000 to the members of the Collective. This will be divided between the 332 collective members who submitted consent to join forms, as described in Section I above.

As stated above, your share of the settlement is estimated to be «BENEFIT_AMOUNT» if the Court approves the Settlement. Your Settlement payment is based on the number of workweeks you were engaged by KeyPoint during the applicable statute of limitations period, as adjusted based on your participation in the case.[3] Your payment was calculated by multiplying your total number of Adjusted Settlement Workweeks by your Workweek Value.[4] Your Adjusted Settlement Workweeks are «Adjusted_Workweek_Value», and your Workweek Value is «Workweek_Value».

All individual settlement payments, and service payments to Orson Judd and Kristin Hettler, will be paid from the $900,000 Plaintiff recovery amount. Service payment means the amounts to be approved by the Court for payment to Orson Judd and Kristin Hettler in recognition of their efforts on behalf of the all plaintiffs. The Court has preliminarily approved service payments in the amount of $7,500.00 to Orson Judd and $7,500.00 to Kristin Hettler.

Each final settlement payment will be allocated to claims for liquidated damages and other relief and will be characterized as non-wage income and reported on an IRS Form 1099.

In addition to the payments coming out of the $900,000 settlement amount, KeyPoint will pay an additional $600,000 for attorneys' fees and costs. KeyPoint also will separately pay the costs of settlement administration.

The Court has preliminarily approved the settlement terms described above.

---

[3] The number of Adjusted Settlement Workweeks for each Plaintiff and all Plaintiffs in the aggregate was calculated by assigning the following values to each workweek: (i) a multiplier of three to any workweek belonging to a Plaintiff was an opt in plaintiff in the *Smith v. KeyPoint* Action, which was the precursor to this Action, and who sat for deposition in that case; (ii) a multiplier of two to any workweek belonging to a Plaintiff who submitted substantive discovery responses (in addition to objections) to Defendants' Interrogatories and Requests for Production while their claims were pending in District Court or who substantially completed the written arbitration survey circulated to Plaintiffs' by Plaintiffs' Counsel; and (iii) a multiplier of one to all other Workweeks. This formula for weighting Settlement Workweeks is designed to reasonably reflect how active participation in the lawsuit by responding to discovery or arbitration surveys increased an opt-in Plaintiff's likelihood of success on his or her claims and, conversely, how those who did not participate had an increased risk of being subject to dismissal. The formula also is designed to reflect the additional delay in recovery of those individuals who originally filed their consent to join forms in the previous *Smith* litigation and appeared for deposition in that case
[4] The Workweek Value was calculated by subtracting the service payments awarded by the Court from the Total $900,000 settlement pool amount and dividing the remainder by the aggregate total number of Adjusted Settlement Workweeks.

## III.    RELEASE OF CLAIMS

The Settlement Agreement contains a release. As a named-Plaintiff or Opt-In Plaintiff, you and the Releasing Persons shall be deemed to forever completely settle, compromise, release, and discharge KeyPoint and the Released Persons from any and all wage claims based on alleged independent contractor misclassification that were pled or which could have been pleaded based on the facts alleged in the Litigation, which accrued at any time on or before October 26, 2020.

Once the Court finally approves the Settlement Agreement, you will be bound by the terms and conditions of the Settlement Agreement, the Court's Approval Order, the judgment, and the release set forth herein. You may obtain a copy of these documents by contacting the Plaintiffs' lawyers listed in Section VIII below. The release of claims will have the same force and effect upon Plaintiffs as if the Settlement Agreement was executed by each Plaintiff.

## IV.    OBJECTING TO THE SETTLEMENT

You may object to the Settlement.  If you object and the Court finally approves the Settlement, you will receive a settlement payment, be legally bound by all orders and judgments entered by the Court, and will not be able to sue, or continue to sue, the Released Parties in any lawsuit relating to the alleged misclassification of Contract Investigators or the alleged failure to pay overtime wages. To object to the Settlement, you must send a letter describing the reasons for your objection. This letter must include your name, address, telephone number, and the last four digits of your social security number.  The letter must be mailed to the following address:  PO Box 91244, Seattle, WA 98111.  To be valid, the letter must be postmarked by June 21, 2021.  Finally, if you object to the settlement, you are entitled to appear at that Fairness Hearing and will be provided with an opportunity to further explain the basis for your objection to the Court.

## V.    FINAL FAIRNESS HEARING

The Court will hold the Fairness Hearing on **Monday, August 16, 2021, at 9:00 a.m.** at the Alfred A. Arraj Courthouse, 901 19th Street, Courtroom A601, Sixth Floor, Denver, Colorado 80294. Any collective Member objecting to the proposed settlement shall appear in-person at the hearing.[5] All other Collective Members and the public may listen to the hearing by calling **Toll Free:  888-636-3807**, with **Access Code:  4296144#**.

At the final fairness hearing, the Court will review the papers submitted by the Parties and any objectors, and hear any properly noticed witnesses.  The Court will decide either at or after the fairness hearing whether to grant final approval of the settlement, and will issue a written order of its decision.

Any Opt-In Plaintiff may attend the hearing, but you do not need to do so in order to receive your individual payment amount.  If you object to the settlement, you may submit your objections, as detailed above, along with any supporting documents, and declare your intent to appear at the

---

[5] Depending on the number of objectors and the status of the COVID-19 pandemic, the Court may require objectors to appear via video conference rather than in-person for the hearing.  The Court will provide notice of any changes as soon as practicable.

fairness hearing, either personally or through an attorney.

If the Court grants final approval, the Settlement Agreement will become effective after expiration of the time for all appeals of the Court's final approval order or, if an appeal is filed, a final determination that the Settlement should be approved. If you are eligible for an individual settlement amount, it will be distributed to you within 30 days after the Settlement becomes effective.

## VI.    ADDRESS INFORMATION

JND Legal Administration is acting as the third party administrator of the Settlement Agreement (the "Third Party Administrator"). The Third Party Administrator has «CF_ADDRESS_1» «CF_ADDRESS_2», «CF_CITY», «CF_STATE» «CF_ZIP» as your current mailing address. If you would like to receive your payment after the Court approves the Settlement or any other correspondence regarding this lawsuit or the Settlement Agreement at a different address, please provide that address to the Third Party Administrator by mail at PO Box 91244, Seattle, WA 98111 or by email at JuddvKeyPoint@jnd.legal.

## VII.    W-9 TAX FORM INFORMATION

KeyPoint has provided the Third Party administrator with a W-9 Form for you.

You are solely responsible for paying taxes based on your receipt of a settlement payment. Neither your attorneys nor KeyPoint's attorneys can provide any advice about such tax payments. You should consult your tax advisor if you have questions about the tax consequences of your individual settlement payments.

## VIII.   ADDITIONAL INFORMATION

This Notice is a summary of your legal rights. Questions about the settlement, or requests for additional information or a copy of the Settlement Agreement, or requests for copies of the pleadings and other records in the litigation should be directed to Plaintiffs' counsel, Schneider Wallace Cottrell Konecky LLP, Joshua G. Konecky, 200 Powell Street, Suite 1400, Emeryville, CA 94608, (Telephone): 415-421-7100, (Email): jkonecky@schneiderwallace.com.

### PLEASE DO NOT TELEPHONE THE COURT FOR INFORMATION REGARDING THIS SETTLEMENT

# EXHIBIT B

████████

| | |
|---|---|
| **From:** | JuddvKeypoint@jnd.legal on behalf of Andrew at KeyPoint Settlement Administrator <JuddvKeypoint@jnd.legal> |
| **Sent:** | Friday, May 7, 2021 12:50 PM |
| **To:** | ████████ |
| **Subject:** | NOTICE OF SETTLEMENT FOR OPT-IN PLAINTIFFS |

**Security Notice:** This email originated outside of JND. Use caution when clicking links or opening attachments.

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

### Case No. 18-cv-00327-RM-STV

ORSON JUDD,
individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC.,
a Delaware corporation,

      Defendant.

### NOTICE OF SETTLEMENT FOR OPT-IN PLAINTIFFS

### PLEASE READ THIS NOTICE CAREFULLY,
### YOUR LEGAL RIGHTS WILL BE AFFECTED.

### NOTICE OF SETTLEMENT FOR ████████
### IN THE GROSS AMOUNT OF ████████

You are receiving this Notice because you filed a "Consent to Join Form" in this lawsuit, *Orson Judd v. KeyPoint Government Solutions, Inc.*, Case No. 18-cv-00327 (RM/STV), in the United States District Court for the District of Colorado as an opt-in Plaintiff. The parties reached an agreement to settle this lawsuit ("Settlement Agreement"). The Settlement Agreement was submitted to the Court for approval, and the Court preliminarily approved the Settlement Agreement on April 27, 2021.

Your share of the Settlement is estimated to be ████████ and you will be

receiving a check for this settlement share in approximately 30 days after the settlement becomes effective as described below. Your settlement payment will be reported as taxable income on an IRS Form 1099. This Notice describes the lawsuit, the settlement details and release of the claims, and the way in which your settlement payment was calculated. Please read it carefully as it contains important information regarding the lawsuit and settlement. Please also be sure to confirm that your address and W-9 tax information is up to date as requested in Sections VI and VII of this Notice below.

## I.    DESCRIPTION OF THE LITIGATION

On March 10, 2017, Plaintiff Orson Judd ("Judd") filed a lawsuit against KeyPoint Government Solutions, Inc. ("KeyPoint") styled *Orson Judd v. KeyPoint Government Solutions, Inc.*, Case No. 18-cv-00327 (RM/STV), in the United States District Court for the District of Colorado. In his Complaint, Judd asserted violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). Judd alleges that KeyPoint violated the FLSA by misclassifying Contract Investigators, including Judd, as independent contractors and by failing to pay overtime wages. Judd brought his claims on behalf of himself as well as "similarly situated" Contract Investigators (collectively, "Plaintiffs"). Plaintiffs allege that, as a result of KeyPoint's practices, they are entitled to overtime wages that they worked but were not paid. Thereafter, collective members joined the litigation by filing consents, which are on file in the lawsuit. KeyPoint denies Plaintiffs' allegations and asserts affirmative defenses.

You are one of the collective members who worked as a Contract Investigator for KeyPoint during the applicable time period and filed a consent to join the lawsuit. As part of the "Consent to Join" form you submitted, you agreed to have Plaintiffs' counsel, Schneider Wallace Cottrell Konecky LLP, represent you in the case. In this regard, your "Consent to Join" affirmed as follows: "**I CHOOSE** the law firm of and attorneys at **SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS** as my attorneys to prosecute my wage claims in this lawsuit. I consent to having Plaintiff Orson Judd and Plaintiff's Counsel make all decisions regarding the litigation, the method and manner of conducting this litigation, the terms of any potential settlement of this litigation, the releasing of claims, to the agreement with Plaintiff's Counsel regarding attorneys' fees and costs made by Plaintiff Orson Judd and to all other matters pertaining to the lawsuit."

The Parties have conducted relevant discovery, investigated the facts, and have made a thorough study of the legal principles applicable to the claims asserted in the litigation. Based upon Plaintiffs' investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including the assessment of the uncertainties of litigation and the

relative benefits conferred upon the Plaintiffs pursuant to the Settlement Agreement, Plaintiffs have concluded that the settlement with KeyPoint on the terms set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Releasing Persons.[1] The parties submitted the Settlement Agreement to the Court, which preliminarily approved the Settlement Agreement on April 27, 2021.

KeyPoint expressly denies any liability or wrongdoing of any kind associated with the claims in the litigation. KeyPoint contends that it complied with applicable federal and state law at all times. By entering into the Settlement Agreement for and on behalf of itself and the Released Persons[2], KeyPoint does not admit any liability or wrongdoing and expressly denies the same. KeyPoint states that it entered into the Settlement Agreement solely for the purpose of avoiding the costs and disruption of further litigation and denies any and all liability.

## II.    SETTLEMENT DETAILS

Under the terms of the settlement, KeyPoint will pay a non-reversionary settlement amount of $900,000 to the members of the Collective. This will be divided between the 332 collective members who submitted consent to join forms, as described in Section I above.

As stated above, your share of the settlement is estimated to be ▮▮▮▮▮▮ if the Court approves the Settlement. Your Settlement payment is based on the number of workweeks you were engaged by KeyPoint during the applicable statute of limitations period, as adjusted based on your participation in the case.[3] Your payment was calculated by multiplying your total number of Adjusted Settlement Workweeks by your Workweek Value.[4] Your Adjusted Settlement Workweeks are ▮▮▮, and your Workweek Value is ▮▮▮▮

All individual settlement payments, and service payments to Orson Judd and Kristin Hettler, will be paid from the $900,000 Plaintiff recovery amount. Service payment means the amounts to be approved by the Court for payment to Orson Judd and Kristin Hettler in recognition of their efforts on behalf of the all plaintiffs. The Court has preliminarily approved service payments in the amount of $7,500.00 to Orson Judd and $7,500.00 to Kristin Hettler.

Each final settlement payment will be allocated to claims for liquidated damages and other relief and will be characterized as non-wage income and reported on an IRS Form 1099.

In addition to the payments coming out of the $900,000 settlement amount, KeyPoint will pay an additional $600,000 for attorneys' fees and costs. KeyPoint also will separately pay the costs of settlement

administration.

The Court has preliminarily approved the settlement terms described above.

## III.    RELEASE OF CLAIMS

The Settlement Agreement contains a release. As a named-Plaintiff or Opt-In Plaintiff, you and the Releasing Persons shall be deemed to forever completely settle, compromise, release, and discharge KeyPoint and the Released Persons from any and all wage claims based on alleged independent contractor misclassification that were pled or which could have been pleaded based on the facts alleged in the Litigation, which accrued at any time on or before October 26, 2020.

Once the Court finally approves the Settlement Agreement, you will be bound by the terms and conditions of the Settlement Agreement, the Court's Approval Order, the judgment, and the release set forth herein. You may obtain a copy of these documents by contacting the Plaintiffs' lawyers listed in Section VIII below. The release of claims will have the same force and effect upon Plaintiffs as if the Settlement Agreement was executed by each Plaintiff.

## IV.    OBJECTING TO THE SETTLEMENT

You may object to the Settlement. If you object and the Court finally approves the Settlement, you will receive a settlement payment, be legally bound by all orders and judgments entered by the Court, and will not be able to sue, or continue to sue, the Released Parties in any lawsuit relating to the alleged misclassification of Contract Investigators or the alleged failure to pay overtime wages. To object to the Settlement, you must send a letter describing the reasons for your objection. This letter must include your name, address, telephone number, and the last four digits of your social security number. The letter must be mailed to the following address: PO Box 91244, Seattle, WA 98111. To be valid, the letter must be postmarked by June 21, 2021. Finally, if you object to the settlement, you are entitled to appear at that Fairness Hearing and will be provided with an opportunity to further explain the basis for your objection to the Court.

## V.    FINAL FAIRNESS HEARING

The Court will hold the Fairness Hearing on **Monday, August 16, 2021, at 9:00 a.m.** at the Alfred A. Arraj Courthouse, 901 19th Street, Courtroom A601, Sixth Floor, Denver, Colorado 80294. Any collective Member objecting to the proposed settlement shall appear in-person at the hearing.[5] All other Collective Members and the public may listen to the hearing by calling **Toll Free: 888-636-3807**, with **Access Code:**

**4296144**#.

At the final fairness hearing, the Court will review the papers submitted by the Parties and any objectors, and hear any properly noticed witnesses. The Court will decide either at or after the fairness hearing whether to grant final approval of the settlement, and will issue a written order of its decision.

Any Opt-In Plaintiff may attend the hearing, but you do not need to do so in order to receive your individual payment amount. If you object to the settlement, you may submit your objections, as detailed above, along with any supporting documents, and declare your intent to appear at the fairness hearing, either personally or through an attorney.

If the Court grants final approval, the Settlement Agreement will become effective after expiration of the time for all appeals of the Court's final approval order or, if an appeal is filed, a final determination that the Settlement should be approved. If you are eligible for an individual settlement amount, it will be distributed to you within 30 days after the Settlement becomes effective.

## VI.    ADDRESS INFORMATION

JND Legal Administration is acting as the third party administrator of the Settlement Agreement (the "Third Party Administrator"). The Third Party Administrator has ██████████████████████████████ as your current mailing address. If you would like to receive your payment after the Court approves the Settlement or any other correspondence regarding this lawsuit or the Settlement Agreement at a different address, please provide that address to the Third Party Administrator by mail at PO Box 91244, Seattle, WA 98111 or by email at JuddvKeyPoint@jnd.legal.

## VII.    W-9 TAX FORM INFORMATION

KeyPoint has provided the Third Party administrator with a W-9 Form for you.

You are solely responsible for paying taxes based on your receipt of a settlement payment. Neither your attorneys nor KeyPoint's attorneys can provide any advice about such tax payments. You should consult your tax advisor if you have questions about the tax consequences of your individual settlement payments.

## VIII.    ADDITIONAL INFORMATION

This Notice is a summary of your legal rights. Questions about the settlement, or requests for additional information or a copy of the

Settlement Agreement, or requests for copies of the pleadings and other records in the litigation should be directed to Plaintiffs' counsel, Schneider Wallace Cottrell Konecky LLP, Joshua G. Konecky, 200 Powell Street, Suite 1400, Emeryville, CA 94608, (Telephone): 415-421-7100, (Email): jkonecky@schneiderwallace.com.

### PLEASE DO NOT TELEPHONE THE COURT FOR INFORMATION REGARDING
### THIS SETTLEMENT

_____

[1] "Releasing Persons" means Plaintiffs, each and every one, and his or her respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest, and assigns that accepts payment of his or her pro rata share of the settlement.

[2] "Released Persons" means KeyPoint Government Solutions, Inc. and its past, present, and future parent companies, affiliates, subsidiaries, divisions, predecessors, successors, partners, owners, joint venturers, affiliated organizations, and its and each of their shareholders, insurers, reinsurers and assigns, and each of their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, employee benefits or welfare programs or plans (including the administrators, trustees, fiduciaries, and insurers of such programs or plans) sponsored or administered by KeyPoint Government Solutions, Inc. (including its affiliates), and any other persons or entities acting on its or their behalf, and any party that was or could have been named as a defendant in the litigation.

[3] The number of Adjusted Settlement Workweeks for each Plaintiff and all Plaintiffs in the aggregate was calculated by assigning the following values to each workweek: (i) a multiplier of three to any workweek belonging to a Plaintiff who was an opt in plaintiff in the Smith v. KeyPoint Action, which was the precursor to this Action, and who sat for deposition in that case; (ii) a multiplier of two to any workweek belonging to a Plaintiff who submitted substantive discovery responses (in addition to objections) to Defendants' Interrogatories and Requests for Production while their claims were pending in District Court or who substantially completed the written arbitration survey circulated to Plaintiffs' by Plaintiffs' Counsel; and (iii ) a multiplier of one to all other Workweeks. This formula for weighting Settlement Workweeks is designed to reasonably reflect how active participation in the lawsuit by responding to discovery or arbitration surveys increased an opt-in Plaintiff's likelihood of success on his or her claims and, conversely, how those who did not participate had an increased risk of being subject to dismissal. The formula also is designed to reflect the additional delay in recovery of those individuals who originally filed their consent to join forms in the previous Smith litigation and appeared for deposition in that case

[4] The Workweek Value was calculated by subtracting the service payments awarded by the Court from the Total $900,000 settlement pool amount and dividing the remainder by the aggregate total number of Adjusted Settlement Workweeks.

[5] Depending on the number of objectors and the status of the COVID-19 pandemic, the Court may require objectors to appear via video conference rather than in-person for the hearing. The Court will provide notice of any changes as soon as practicable.

To unsubscribe, please click on the following link: unsubscribe



██████████

**From:**                Andrew at KeyPoint Settlement Administrator <JuddvKeypoint@jnd.legal>
**Sent:**               Friday, May 7, 2021 12:20 PM
**To:**                  ██████████
**Subject:**          NOTICE OF SETTLEMENT FOR OPT-IN PLAINTIFFS
**Attachments:**     W-9 Form.pdf

> **Security Notice:** This email originated outside of JND. Use caution when clicking links or opening attachments.

### THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

**Case No. 18-cv-00327-RM-STV**

ORSON JUDD,
individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

KEYPOINT GOVERNMENT SOLUTIONS, INC.,
a Delaware corporation,

      Defendant.

---

**NOTICE OF SETTLEMENT FOR OPT-IN PLAINTIFFS**

**PLEASE READ THIS NOTICE CAREFULLY,
YOUR LEGAL RIGHTS WILL BE AFFECTED.**

---

**NOTICE OF SETTLEMENT FOR ██████████
IN THE GROSS AMOUNT OF ██████████**

---

You are receiving this Notice because you filed a "Consent to Join Form" in this lawsuit, *Orson Judd v. KeyPoint Government Solutions, Inc.*, Case No. 18-cv-00327 (RM/STV), in the United States District Court for the District of Colorado as an opt-in Plaintiff. The parties reached an agreement to settle this lawsuit ("Settlement Agreement"). The Settlement Agreement was submitted to the Court for approval, and the Court preliminarily approved the Settlement Agreement on April 27, 2021.

Your share of the Settlement is estimated to be ██████████ and you will be

receiving a check for this settlement share in approximately 30 days after the settlement becomes effective as described below. Your settlement payment will be reported as taxable income on an IRS Form 1099. This Notice describes the lawsuit, the settlement details and release of the claims, and the way in which your settlement payment was calculated. Please read it carefully as it contains important information regarding the lawsuit and settlement. Please also be sure to confirm that your address and W-9 tax information is up to date as requested in Sections VI and VII of this Notice below.

## I.    DESCRIPTION OF THE LITIGATION

On March 10, 2017, Plaintiff Orson Judd ("Judd") filed a lawsuit against KeyPoint Government Solutions, Inc. ("KeyPoint") styled *Orson Judd v. KeyPoint Government Solutions, Inc.*, Case No. 18-cv-00327 (RM/STV), in the United States District Court for the District of Colorado. In his Complaint, Judd asserted violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). Judd alleges that KeyPoint violated the FLSA by misclassifying Contract Investigators, including Judd, as independent contractors and by failing to pay overtime wages. Judd brought his claims on behalf of himself as well as "similarly situated" Contract Investigators (collectively, "Plaintiffs"). Plaintiffs allege that, as a result of KeyPoint's practices, they are entitled to overtime wages that they worked but were not paid. Thereafter, collective members joined the litigation by filing consents, which are on file in the lawsuit. KeyPoint denies Plaintiffs' allegations and asserts affirmative defenses.

You are one of the collective members who worked as a Contract Investigator for KeyPoint during the applicable time period and filed a consent to join the lawsuit. As part of the "Consent to Join" form you submitted, you agreed to have Plaintiffs' counsel, Schneider Wallace Cottrell Konecky LLP, represent you in the case. In this regard, your "Consent to Join" affirmed as follows: "**I CHOOSE** the law firm of and attorneys at **SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS** as my attorneys to prosecute my wage claims in this lawsuit. I consent to having Plaintiff Orson Judd and Plaintiff's Counsel make all decisions regarding the litigation, the method and manner of conducting this litigation, the terms of any potential settlement of this litigation, the releasing of claims, to the agreement with Plaintiff's Counsel regarding attorneys' fees and costs made by Plaintiff Orson Judd and to all other matters pertaining to the lawsuit."

The Parties have conducted relevant discovery, investigated the facts, and have made a thorough study of the legal principles applicable to the claims asserted in the litigation. Based upon Plaintiffs' investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including the assessment of the uncertainties of litigation and the

relative benefits conferred upon the Plaintiffs pursuant to the Settlement Agreement, Plaintiffs have concluded that the settlement with KeyPoint on the terms set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Releasing Persons.[1] The parties submitted the Settlement Agreement to the Court, which preliminarily approved the Settlement Agreement on April 27, 2021.

KeyPoint expressly denies any liability or wrongdoing of any kind associated with the claims in the litigation. KeyPoint contends that it complied with applicable federal and state law at all times. By entering into the Settlement Agreement for and on behalf of itself and the Released Persons[2], KeyPoint does not admit any liability or wrongdoing and expressly denies the same. KeyPoint states that it entered into the Settlement Agreement solely for the purpose of avoiding the costs and disruption of further litigation and denies any and all liability.

## II.    SETTLEMENT DETAILS

Under the terms of the settlement, KeyPoint will pay a non-reversionary settlement amount of $900,000 to the members of the Collective. This will be divided between the 332 collective members who submitted consent to join forms, as described in Section I above.

As stated above, your share of the settlement is estimated to be ▉▉▉▉▉▉ if the Court approves the Settlement. Your Settlement payment is based on the number of workweeks you were engaged by KeyPoint during the applicable statute of limitations period, as adjusted based on your participation in the case.[3] Your payment was calculated by multiplying your total number of Adjusted Settlement Workweeks by your Workweek Value.[4] Your Adjusted Settlement Workweeks are ▉▉▉▉▉, and your Workweek Value is ▉▉▉▉▉.

All individual settlement payments, and service payments to Orson Judd and Kristin Hettler, will be paid from the $900,000 Plaintiff recovery amount. Service payment means the amounts to be approved by the Court for payment to Orson Judd and Kristin Hettler in recognition of their efforts on behalf of the all plaintiffs. The Court has preliminarily approved service payments in the amount of $7,500.00 to Orson Judd and $7,500.00 to Kristin Hettler.

Each final settlement payment will be allocated to claims for liquidated damages and other relief and will be characterized as non-wage income and reported on an IRS Form 1099.

In addition to the payments coming out of the $900,000 settlement amount, KeyPoint will pay an additional $600,000 for attorneys' fees and costs. KeyPoint also will separately pay the costs of settlement

administration.

The Court has preliminarily approved the settlement terms described above.

## III.    RELEASE OF CLAIMS

The Settlement Agreement contains a release. As a named-Plaintiff or Opt-In Plaintiff, you and the Releasing Persons shall be deemed to forever completely settle, compromise, release, and discharge KeyPoint and the Released Persons from any and all wage claims based on alleged independent contractor misclassification that were pled or which could have been pleaded based on the facts alleged in the Litigation, which accrued at any time on or before October 26, 2020.

Once the Court finally approves the Settlement Agreement, you will be bound by the terms and conditions of the Settlement Agreement, the Court's Approval Order, the judgment, and the release set forth herein. You may obtain a copy of these documents by contacting the Plaintiffs' lawyers listed in Section VIII below. The release of claims will have the same force and effect upon Plaintiffs as if the Settlement Agreement was executed by each Plaintiff.

## IV.    OBJECTING TO THE SETTLEMENT

You may object to the Settlement. If you object and the Court finally approves the Settlement, you will receive a settlement payment, be legally bound by all orders and judgments entered by the Court, and will not be able to sue, or continue to sue, the Released Parties in any lawsuit relating to the alleged misclassification of Contract Investigators or the alleged failure to pay overtime wages. To object to the Settlement, you must send a letter describing the reasons for your objection. This letter must include your name, address, telephone number, and the last four digits of your social security number. The letter must be mailed to the following address: PO Box 91244, Seattle, WA 98111. To be valid, the letter must be postmarked by June 21, 2021. Finally, if you object to the settlement, you are entitled to appear at that Fairness Hearing and will be provided with an opportunity to further explain the basis for your objection to the Court.

## V.    FINAL FAIRNESS HEARING

The Court will hold the Fairness Hearing on **Monday, August 16, 2021, at 9:00 a.m.** at the Alfred A. Arraj Courthouse, 901 19th Street, Courtroom A601, Sixth Floor, Denver, Colorado 80294. Any collective Member objecting to the proposed settlement shall appear in-person at the hearing.[5] All other Collective Members and the public may listen to the hearing by calling **Toll Free: 888-636-3807**, with **Access Code:**

4296144#.

At the final fairness hearing, the Court will review the papers submitted by the Parties and any objectors, and hear any properly noticed witnesses. The Court will decide either at or after the fairness hearing whether to grant final approval of the settlement, and will issue a written order of its decision.

Any Opt-In Plaintiff may attend the hearing, but you do not need to do so in order to receive your individual payment amount. If you object to the settlement, you may submit your objections, as detailed above, along with any supporting documents, and declare your intent to appear at the fairness hearing, either personally or through an attorney.

If the Court grants final approval, the Settlement Agreement will become effective after expiration of the time for all appeals of the Court's final approval order or, if an appeal is filed, a final determination that the Settlement should be approved. If you are eligible for an individual settlement amount, it will be distributed to you within 30 days after the Settlement becomes effective.

## VI.    ADDRESS INFORMATION

JND Legal Administration is acting as the third party administrator of the Settlement Agreement (the "Third Party Administrator"). The Third Party Administrator has █████████████████████ as your current mailing address. If you would like to receive your payment after the Court approves the Settlement or any other correspondence regarding this lawsuit or the Settlement Agreement at a different address, please provide that address to the Third Party Administrator by mail at PO Box 91244, Seattle, WA 98111 or by email at JuddvKeyPoint@jnd.legal.

## VII.    W-9 TAX FORM INFORMATION

KeyPoint has not provided the Third Party administrator with a W-9 Form for you. You must complete a W-9 Form in order to receive your settlement payment. To do so, please return your completed W-9 form by mail at PO Box 91244, Seattle, WA 98111 or by email at JuddvKeyPoint@jnd.legal.

You are solely responsible for paying taxes based on your receipt of a settlement payment. Neither your attorneys nor KeyPoint's attorneys can provide any advice about such tax payments. You should consult your tax advisor if you have questions about the tax consequences of your individual settlement payments.

## VIII.    ADDITIONAL INFORMATION

This Notice is a summary of your legal rights. Questions about the settlement, or requests for additional information or a copy of the Settlement Agreement, or requests for copies of the pleadings and other records in the litigation should be directed to Plaintiffs' counsel, Schneider Wallace Cottrell Konecky LLP, Joshua G. Konecky, 200 Powell Street, Suite 1400, Emeryville, CA 94608, (Telephone): 415-421-7100, (Email): jkonecky@schneiderwallace.com.

**PLEASE DO NOT TELEPHONE THE COURT FOR INFORMATION REGARDING
THIS SETTLEMENT**

_____

[1] "Releasing Persons" means Plaintiffs, each and every one, and his or her respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest, and assigns that accepts payment of his or her pro rata share of the settlement.

[2] "Released Persons" means KeyPoint Government Solutions, Inc. and its past, present, and future parent companies, affiliates, subsidiaries, divisions, predecessors, successors, partners, owners, joint venturers, affiliated organizations, and its and each of their shareholders, insurers, reinsurers and assigns, and each of their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, employee benefits or welfare programs or plans (including the administrators, trustees, fiduciaries, and insurers of such programs or plans) sponsored or administered by KeyPoint Government Solutions, Inc. (including its affiliates), and any other persons or entities acting on its or their behalf, and any party that was or could have been named as a defendant in the litigation.

[3] The number of Adjusted Settlement Workweeks for each Plaintiff and all Plaintiffs in the aggregate was calculated by assigning the following values to each workweek: (i) a multiplier of three to any workweek belonging to a Plaintiff was an opt in plaintiff in the Smith v. KeyPoint Action, which was the precursor to this Action, and who sat for deposition in that case; (ii) a multiplier of two to any workweek belonging to a Plaintiff who submitted substantive discovery responses (in addition to objections) to Defendants' Interrogatories and Requests for Production while their claims were pending in District Court or who substantially completed the written arbitration survey circulated to Plaintiffs' by Plaintiffs' Counsel; and (iii ) a multiplier of one to all other Workweeks. This formula for weighting Settlement Workweeks is designed to reasonably reflect how active participation in the lawsuit by responding to discovery or arbitration surveys increased an opt-in Plaintiff's likelihood of success on his or her claims and, conversely, how those who did not participate had an increased risk of being subject to dismissal. The formula also is designed to reflect the additional delay in recovery of those individuals who originally filed their consent to join forms in the previous Smith litigation and appeared for deposition in that case

[4] The Workweek Value was calculated by subtracting the service payments awarded by the Court from the Total $900,000 settlement amount and dividing the remainder by the aggregate total number of Adjusted Settlement Workweeks.

[5] Depending on the number of objectors and the status of the COVID-19 pandemic, the Court may require objectors to appear via video conference rather than in-person for the hearing. The Court will provide notice of any changes as soon as practicable.

To unsubscribe, please click on the following link: unsubscribe